PAUL WILMARTH & another[1] vs. TOWN OF GEORGETOWN
& others.[2]

No. 89-P-476.

Essex. April 11, 1990. - June 20, 1990.

Present: PERRETTA, SMITH, & FINE, JJ.

*Civil Rights*, Availability of remedy. *Police*, Outside employment. *Municipal Corporations*, Police, Officers and employees. *Due Process of Law*, Employment. *Practice, Civil,* Discovery.

Discussion of the extent of a municipality's authority to regulate the off-duty activities of its police officers. [701-703]

A police officer's claim, based on 42 U.S.C. § 1983 (1982), alleging she was denied due process by her municipal employer's prohibiting her from engaging in off-duty private employment was properly dismissed, where, in light of a municipality's broad authority to regulate off-duty police activities, a police officer has no constitutionally protected property interest in being allowed to continue to work at a second job. [703]

A plaintiff's claims against a municipality, alleging, under 42 U.S.C. § 1983 (1982), the deprivation without due process of both his constitutionally protected property interest in his municipal employment and his liberty interest in his reputation, were properly dismissed where the plaintiff had been afforded notice and an opportunity to be heard before he was dismissed from employment and where he then had availed himself of an adequate remedy by bringing a civil action that resulted in his reinstatement. [703-705]

In a civil action, no abuse of discretion was shown in the judge's deciding motions to dismiss and for summary judgment at the stage in the proceedings when he did. [706]

CIVIL ACTION commenced in the Superior Court Department on August 26, 1986.

Motions to dismiss and for summary judgment were heard by *Richard S. Kelley*, J.

---

[1]Gretchen Wilmarth.

[2]Alan Aulson and Paul Thompson, individually, and as selectmen of the town.

*Arthur K. Ross, Jr. (Peter M. Ross* with him) for the plaintiffs.

*Joseph D. Regan* for the defendants.

FINE, J. When they filed their complaint, Paul and Gretchen Wilmarth, a married couple, were both employed by the town of Georgetown, Paul as an unpaid member of the board of health, and Gretchen as a police sergeant. The issue we discuss is the sufficiency of their complaint against the defendants, the town of Georgetown and two of its selectmen, insofar as it alleges violations of their Federal constitutional right to procedural due process and their right to recover damages under 42 U.S.C. § 1983 (1982).

The Wilmarths' complaint had numerous counts reflecting various theories.[3] A Superior Court judge dismissed certain counts, including the count under 42 U.S.C § 1983, allowed summary judgment as to others, and left a claim alleging defamation of Paul to be tried.[4] On appeal, the Wilmarths challenge the rulings adverse to them.[5] The motion judge issued a comprehensive memorandum of decision in which he carefully explained his reasoning. Based upon that explanation, we affirm the judgment without further comment as to all of the issues raised on appeal except those relating to the claims under 42 U.S.C. § 1983. The questions raised by those claims, because they are close, merit discussion, but our decision, nevertheless, is to affirm the dismissal.

---

[3]The various counts in the complaint were based upon the following theories: Count I, grounded on 42 U.S.C. § 1983 (1982), alleged the deprivation without due process of both Paul's and Gretchen's protected property interests in their employment and their liberty interests in their good names; Count II alleged violations of 42 U.S.C. § 1985(3) (1982), as to both Paul and Gretchen; Count III alleged violations as to both Paul and Gretchen of the Massachusetts Civil Rights Act, G. L. c. 12, § 11H & 11I; Count IV alleged defamation of Paul; Count V alleged defamation of Gretchen; Count VI alleged tortious interference with Gretchen's contract with a movie theater; and Count VII alleged violations of substantive due process.

[4]A judge, not the judge who decided the motions under review, allowed a motion filed by the defendants for separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

[5]They waived argument as to the substantive due process claim.

1. *Gretchen's claim.* We take the allegations of Gretchen's complaint as true for purposes of appraising its sufficiency. See *Nader* v. *Citron,* 372 Mass. 96, 98 (1977). Gretchen alleged that for several years, while she was a full-time police officer, she worked part-time as a ticket taker for a drive-in theater in Georgetown.[6] On April 14, 1986, three Georgetown police officers attended a meeting of the board of selectmen, who serve also as police commissioners for the town, and presented a letter in which they alleged, without personal knowledge, that Gretchen had been stealing money from the theater owner. Gretchen received no notice of the meeting and was not present. The selectmen voted to adjourn to executive session to discuss the allegations. They made no investigation beyond consideration of the word of the three police officers. The charges were false. The selectmen, nevertheless, directed the chief of police to order Gretchen to quit the off-duty employment. The next day the police chief communicated the order to Gretchen by letter in which he referred to the allegations made by the three police officers that she had been stealing money from her employer. As a result of the order, Gretchen left her job at the drive-in theater.

To prevail on her claim under 42 U.S.C. § 1983, Gretchen was required to show that the defendants, acting under color of State law, deprived her of a constitutionally protected property or liberty interest without due process of law. See *Ogilbee* v. *Western Dist. Guidance Center, Inc.,* 658 F.2d 257, 258 (4th Cir. 1981); *Chongris* v. *Board of Appeals of Andover,* 811 F.2d 36, 40 (1st Cir. 1987). Gretchen's claim under 42 U.S.C. § 1983 is based upon the selectmen's order that she quit her job at the movie theater and the proceedings leading up to the selectmen's order. She alleged that, without ever being offered any type of hearing, the defendants interfered with her constitutionally protected property interest in her right to work for the movie theater and her

---

[6]In supplementary materials filed with the court in support of the defendants' motion for summary judgment, the theater was acknowledged to be an "adult" movie theater.

protected liberty interest in her reputation. In her appellate brief she does not argue the deprivation of her liberty interest,[7] so we focus our discussion on her claim of a protected property interest in her employment at the drive-in theater. Properly characterized, her claimed property interest is not simply her right to work for the theater, but her right to be employed in a movie theater while she was a full-time police officer.[8]

---

[7]The Fourteenth Amendment to the Federal Constitution offers protection against defamatory charges that tend to severely damage one's reputation and impose a stigma that would interfere with one's ability to take advantage of future employment opportunities. See *Board of Regents* v. *Roth*, 408 U.S. 564, 573 (1972); *Paul* v. *Davis*, 424 U.S. 693 (1976); *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 762 (1976); *Smith* v. *Commissioner of Mental Retardation, ante* 628 (1990). The order to quit the movie theater job was based, in part, on charges, possibly credited by the selectmen, that Gretchen had committed larceny. If publicized, acceptance by the selectmen of those charges would have a tendency to stigmatize her and cause her difficulty in finding other employment. For the liberty interest protection to attach, Gretchen had to have suffered a serious deprivation, but it was not necessary that her public employment be terminated. It is enough that Gretchen alleged individualized governmental action based upon charges of such a nature that, if accepted as true, would harm her reputation, and that the governmental action deprived her of the opportunity to pursue her outside employment. Compare *Wisconsin* v. *Constantineau*, 400 U.S. 433, 437 (1971). The complaint, therefore, might have been sufficient to allege the deprivation of a protected liberty interest. She would have faced a problem in opposing summary judgment on her liberty interest theory, however, based upon the supplementary materials before the judge. The accusations of the three individual police officers were made to the selectmen at a closed meeting, and there were no public announcements or press reports. Gretchen admitted on deposition that she did not know of any way in which her reputation had been affected adversely, and there was no indication that her chances of obtaining other outside employment were affected by the proceedings or the order to quit the movie theater job. See *Beitzell* v. *Jeffrey*, 643 F.2d 870, 879 (1st Cir. 1981). But contrast *Smith* v. *Commissioner of Mental Retardation, supra* at 636-637.

[8]Although her police job was not subject to the civil service law or a collective bargaining agreement, Gretchen could only be dismissed for cause. See St. 1975, c. 482. She enjoyed a property interest, therefore, in continued government employment protected by procedural due process guarantees of notice and an opportunity to be heard prior to termination. See *Fredericks* v. *Vartanian*, 694 F.2d 891, 892 (1st Cir. 1982). Compare *Bennett* v. *Boston*, 869 F.2d 19, 21-22 (1st Cir. 1989); *Harris* v. *Trustees of State Colleges*, 405 Mass. 515, 520 (1989). As she complied with the

We first dispose of two misconceptions on the part of the defendants relating to Gretchen's claim that she had a constitutionally protected property interest in her off-duty employment. It is not fatal to a claim of governmental interference with such a right that the employment on which it is based is in the private sector. Recent Federal cases have recognized that one may have a property interest in private employment which merits constitutional protection against procedurally unfair governmental interference. See *Federal Deposit Ins. Corp.* v. *Mallen,* 486 U.S. 230, 240 (1988); *Chernin* v. *Lyng,* 874 F.2d 501, 505 (8th Cir. 1989); *DiMartini* v. *Ferrin,* 889 F.2d 922, 928-929 (9th Cir. 1989). Nor is it constitutionally significant that the private employment interfered with might happen to be at-will employment. Whatever Gretchen's rights may have been against her employer, she had a right to continue in her outside employment unmolested by unlawful governmental interference. See *Truax* v. *Raich,* 239 U.S. 33, 38 (1915).

Whether one's interest or entitlement rises to the level of a protected property right depends upon the extent to which one has been made secure by State or Federal law in its enjoyment. See *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 577 (1972); *Perry* v. *Sindermann,* 408 U.S. 593, 601-602 (1972); *Beitzell* v. *Jeffrey,* 643 F.2d 870, 875 (1st Cir. 1981). The extent of a municipality's authority to regulate the activities of its police officers is generally not a Federal matter. See *Kelly* v. *Johnson,* 425 U.S. 238, 247 (1976). In *Briggs* v. *North Muskegon Police Dept.,* 563 F. Supp. 585, 590 (W.D. Mich. 1983), a restriction on a police officer's off-duty activities was held to interfere with his fundamental right to privacy under the United States Constitution, but there is no such claim in the present case. We look, therefore, to Massachusetts law to define the degree of entitlement Gretchen had in her outside employment.

One takes employment as a police officer on the terms on which it is offered, and it is an implicit term of a police of-

order that she quit her outside job, her employment as a police officer was not directly threatened.

ficer's employment in Massachusetts that the government may impose any conditions on his outside activities that are not unreasonable. See *McAuliffe* v. *Mayor of New Bedford*, 155 Mass. 216, 220 (1892); *Broderick* v. *Police Commr. of Boston*, 368 Mass. 33, 42 (1975); *Atterberry* v. *Police Commr. of Boston*, 392 Mass. 550, 555-556 (1984). Compare *Selectmen of Framingham* v. *Civil Serv. Commn.*, 7 Mass. App. Ct. 398, 406 (1979). In general, rules and regulations adopted to promote the effective administration, good order, and discipline of the police force are valid. In that connection, it was held in *Bell* v. *District Court of Holyoke*, 314 Mass. 622, 625 (1943), that outside employment of a fire fighter could be regulated. There is no meaningful distinction between fire fighters and police officers for these purposes. The court in *Bell* said, "The [officer] has no just complaint that he does not enjoy the same freedom that he would have as a private citizen in reference to the employment of his time and efforts, when the restrictions imposed are no more than are reasonably required for the maintenance of the efficiency of a municipal department and may be properly enforced upon one who has voluntarily become a member of the department. It is optional with him whether to continue in the department and recognize the restrictions or to leave the department and rid himself of such impediments to his personal freedom . . . ." *Id.* at 625.

There are legitimate concerns underlying the broad authority given to municipal supervisors over off-duty employment of police officers paid for full-time work. Given the nature of police work, it is important that officers be flexible in their work schedules so that they may be available for sudden shift changes and emergencies, that they be alert and fit while on duty, and that they command the respect of the community. Not surprisingly, broad authority over off-duty private employment of police officers is generally recognized elsewhere as well. See *Fort Wayne Patrolmen's Benevolent Assn.* v. *Fort Wayne*, 625 F. Supp. 722, 731-732 (N.D. Ind. 1986); *Bowman* v. *Pennsauken*, 709 F. Supp. 1329, 1339 (D. N.J. 1989); *Phillips* v. *Hall*, 113 Ill. App. 3d 409, 418

(1983); Annot., Validity, Construction, and Application of Regulation Regarding Outside Employment of Governmental Employees or Officers, 94 A.L.R. 3d 1230 (1979); Randall & Franklin, Municipal Law § 818 (3d ed. 1982); 16A Mc-Quillin, Municipal Corporations § 45.34 (3d ed. 1984).

It is true that, although the selectmen had "extremely broad rule-making power" to govern the police, see *Boston Police Patrolmen's Assn.* v. *Police Commr. of Boston*, 4 Mass. App. Ct. 673, 674 (1976), there was no statute or regulation generally limiting the right of Georgetown police officers to maintain outside employment.[9] Moreover, the right of a government employee, whose salary can generally not be expected to be in the generous range, to work elsewhere in his free time to supplement his income is an important one. Having worked at the drive-in theater for a number of years while she was serving as a police officer, apparently without any expression of dissatisfaction from her superiors, Gretchen might well have expected to continue to enjoy the benefits of her outside employment.[10] Nevertheless, in light of the long-recognized and very broad authority to regulate off-duty activities of police, including private employment, we do not think Gretchen's interest in being allowed to continue to work at her second job rose quite to the level of a constitutionally protected property right.

2. *Paul's claim.* Paul made the following allegations, which we take to be true for purposes of assessing the sufficiency of his complaint. In 1985, complaints were made to the selectmen accusing Paul of conflicts of interest. Specifically, local contractors complained that Paul was requiring the unnecessary installation of septic system valves distributed by a company owned by his wife and son. The allegations were false. On May 31, 1985, Paul attended a joint meeting of the selectmen and the board of health, convened

[9]General Laws c. 268A, § 23, however, prohibits town employees from engaging in outside employment likely to create a conflict of interest.

[10]Gretchen does not allege, however, that other Georgetown police officers have outside jobs or that, in violation of equal protection principles, she was singled out unfairly.

to hear the contractors' grievances. By letter dated June 3, 1985, the selectmen asked Paul to resign, but he refused. The selectmen then asked the State Ethics Commission to conduct an investigation. That commission informed the selectmen that they found no unlawful conflict of interest. On August 15, 1985, the selectmen notified Paul that they would hold a hearing on the misconduct charges on August 27, 1985. The notice invited him to bring counsel and witnesses and indicated that the local sewage disposal contractors would testify. A hearing was held as scheduled, but Paul did not attend.

At the conclusion of the hearing, the selectmen voted to suspend Paul from the board of health and to refer the matter to the district attorney's office. Following the district attorney's communication of a determination that the evidence was insufficient to warrant further investigation of the alleged violation, the selectmen voted, on December 2, 1985, to dismiss Paul. Paul successfully challenged his removal in a separate Superior Court action (Paul Wilmarth *vs.* Paul Thompson, Civ. No. 85-2358 [Super Ct. Essex Co., Mar. 25, 1986]) and was reinstated to his position in March, 1986.

The local press reported in detail the entire series of proceedings in stories that included allegedly defamatory statements by the defendants about Paul.

Even though he was not paid for his services as a member of the board of health, Paul was at all relevant times a public employee whose statutory term of office had not run out. On appeal, there is no dispute among the parties that the judge ruled properly that Paul had a constitutionally protected property interest in his job. See *Regents of State Colleges* v. *Roth*, 408 U.S. at 577. Paul also properly alleged, as the judge acknowledged, a constitutionally protected liberty interest, inasmuch as he was claiming that the defendants' actions charging him with unlawful conflicts of interest were defamatory and had a tendency to stigmatize him and to cause him to lose a substantial governmental benefit, namely, his position on the board of health. See *Paul* v. *Davis*, 424 U.S. 693, 709-710 (1976); *Stetson* v. *Selectmen of Carlisle*,

369 Mass. 755, 762 (1976). However, according to his own allegations in the complaint, Paul received all the process that was due him.

Paul was notified before the suspension that led to his termination that a hearing would be held. All that was required for a constitutionally adequate pretermination hearing was fair notice and a reasonable opportunity to respond to the charges. See *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542 (1985). We think, in light of all the circumstances, that Paul had fair notice of the particular subject matter to be discussed even though it was described very broadly as his misconduct as a member of the board of health. The written notice informed him that local sewage disposal contractors would appear to testify. Moreover, the conflict of interest charge, based upon the contractors' allegations, had been aired at previous meetings of the selectmen and had resulted in complaints to the State Ethics Commission and requests to Paul for his resignation. The hearing presented Paul with a reasonable opportunity to clear his name and to present his case to the selectmen for retention of his position both on the merits of the charges and on the basis of his statutory tenure rights. He chose, however, to forgo the pretermination process offered to him. Having done so, he may not complain now of his failure to receive such process. See *Roslindale Coop. Bank* v. *Greenwald*, 638 F.2d 258, 261 (1st Cir. 1981); *Limerick* v. *Greenwald*, 749 F.2d 97, 99 (1st Cir. 1984); *Chongris* v. *Board of Appeals of Andover*, 811 F.2d at 41.

Further, Paul exercised his right to bring a postdeprivation State court action to remedy at least the deprivation of his constitutionally protected property interest. On its face, the order entered in the declaratory judgment action resulting in his reinstatement was a fully adequate remedy. See *Parratt* v. *Taylor*, 451 U.S. 527, 544 (1981); *Hudson* v. *Palmer* 468 U.S. 517, 535-536 (1984). No right to back pay was involved. Had he felt that he was entitled to monetary damages, he could have sought them in the declaratory action.

3. *Contentions of procedural unfairness in the trial court.*
The plaintiffs complain of procedural unfairness which pre-
vented them from completing discovery before the motions
were decided. The defendants conducted vigorous discovery,
as did the plaintiffs. The defendants sought protective orders
unsuccessfully in the trial court, but the plaintiffs have failed
to identify for us any particular avenue of discovery they
would have pursued had they had more time, or what addi-
tional facts they think they might have unearthed. The plain-
tiffs have not shown any abuse of discretion on the part of
the judge in proceeding when he did to dispose of the mo-
tions. Nor have they shown any prejudice.

*Partial judgment affirmed.*