William Clifton LEWIS, Petitioner-Appellant,

v.

Warren YOUNG, Superintendent, and Lt. Michael Paschke, Respondents.

Court of Appeals

*No. 89-2214. Submitted on briefs July 18, 1990.—Decided April 25, 1991.*

(Also reported in 470 N.W.2d 328.)

For the petitioner-appellant the cause was submitted on the briefs of *William Clifton Young, pro se,* of Waupun.

For the respondents the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *John J. Glinski,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. William Clifton Lewis appeals from a judgment dismissing his action brought under 42 U.S.C. sec. 1983.[1] The trial court dismissed the action because Lewis has an adequate post-deprivation remedy under state law for the property loss he alleged. We agree, and reject his remaining contentions. We conclude that his complaint fails to state a claim and we therefore affirm.

---

[1] 42 U.S.C. sec. 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Lewis is an inmate at the Waupun Correctional Institution (WCI), a state prison. He brought this action in 1986 against Warren Young, Superintendent of Waupun, and Michael Paschke, a correctional officer at that facility. He alleges that the defendants deprived him of property in violation of his right to due process under the fourteenth amendment to the United States Constitution. He seeks compensatory and punitive damages, a declaratory judgment, and an injunction.

Lewis alleges that Paschke, as the supervisor of the Waupun property department, created a document called the "WCI Approved List." He alleges that his wife forwarded to him a ream of paper, a legal pad, and envelopes. Paschke confiscated them and declared the items contraband because they were not on "his list." Lewis's wife argued to various officials that the materials were allowed under "Wis. Adm. Code, Ch. 309, Internal Management Procedure No. 1, Page 7." Young ordered Paschke to give Lewis the items. Lewis's wife then forwarded him two more reams of paper and Paschke confiscated them. Young upheld Paschke's decision.

Lewis also alleges that after using his electronic typewriter at the prison for four months, he sent it to a dealer and had its memory expanded by interfacing it with a floppy disk drive and floppy disk. When the machine was returned to the prison, Paschke confiscated it because the disk drive was separate from the machine. Lewis and his wife again contacted various officials. The typewriter dealer spoke with Young, attempting to clarify that the machine had not been changed and fell within the above-cited code provision. The machine was not given to Lewis. He had to arrange for its return to the dealer to remove the expanded memory.

Lewis claims that Paschke created and enforced a policy he knew or should have known would deprive

576

Lewis of property to which he was entitled under administrative rules, and that Paschke created this policy in violation of ch. 227, Stats., rule-making procedure. He alleges that Young allowed Paschke to do so and supported confiscation of Lewis's property.

This is Lewis's second appeal: The first appeal resulted from the circuit court's dismissal of his complaint on grounds that Lewis did not file a notice of claim pursuant to sec. 893.82, Stats. We summarily reversed, because the supremacy clause of the United States Constitution preempts application of state notice-of-claim statutes to sec. 1983 actions brought in state court. *Lewis v. Young,* No. 89-0094 (Wis. Ct. App. Aug. 8, 1989). *Felder v. Casey,* 487 U.S. 131 (1988) so held. We remanded for the trial court to determine whether Lewis has an adequate post-deprivation remedy to address the alleged taking of his property. The trial court concluded that Lewis has an adequate remedy in the form of an action for damages and dismissed the action. Since our summary disposition did not explain the rationale for our mandate, we return to the complaint for a more thorough analysis.

A sec. 1983 action may be brought in a state court. *Terry v. Kolski,* 78 Wis. 2d 475, 496-97, 254 N.W.2d 704, 712 (1977). A plaintiff may obtain money damages, equitable relief or declaratory relief in a sec. 1983 action.

However, a sec. 1983 action does not necessarily lie when a plaintiff has suffered a property loss at the hands of a state employee acting under color of state law. That is true even when, as here, the plaintiff suffering the loss claims that he has been deprived of property without due process, contrary to the fourteenth amendment to the United States Constitution.

577

■ To obtain sec. 1983 relief for a property deprivation without due process of law, the plaintiff must show a constitutional violation by the state. The elements of such a violation are (1) a showing that the state was required to provide the plaintiff with a due process hearing before the property loss occurred, or, if the state is not required to have done so, (2) that the state cannot or will not provide the plaintiff with an adequate remedy after the loss occurred. Those principles were established in *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984).

The *Parratt* court held that a prisoner who claimed he had been deprived of property without due process of law when state prison officials negligently lost his property, was not automatically entitled to bring an action under 42 U.S.C. sec. 1983. The court said that if he lost his property because of a random and unauthorized act by a state employee, and not as a result of established state procedure, the state had not deprived the prisoner of property without due process, since no practical way exists by which the state could provide him with a predeprivation hearing. 451 U.S. at 541, 543.

The *Parratt* court held that due process was accorded to the prisoner, since the state had provided him with a remedy after the deprivation occurred, a claims procedure for prisoners. The court said:

> Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under [sec.] 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and

578

> we hold that they are sufficient to satisfy the require-
> ments of due process.

*Id.* at 544. The court concluded that the prisoner in the appeal before it could not bring an action under 42 U.S.C. sec. 1983.

In *Hudson,* the United States Supreme Court extended its holding in *Parratt.* In *Hudson,* the prisoner brought a sec. 1983 action against a prison officer. He claimed that the officer had intentionally destroyed his non-contraband personal property during a "shake-down" of his locker and cell and that he therefore had been deprived of property without due process. The *Hudson* court held that the prisoner could not bring a sec. 1983 action for damages for the loss of his property. The court said: "The state can no more anticipate and control in advance the random and unauthorized inten-tional conduct of its employees than it can anticipate similar negligent conduct." 468 U.S. at 533.

> Accordingly, we hold that an unauthorized inten-
> tional deprivation of property by a state employee
> does not constitute a violation of the procedural
> requirements of the Due Process Clause of the Four-
> teenth Amendment if a meaningful postdeprivation
> remedy for the loss is available. For intentional, as
> for negligent deprivations of property by state
> employees, the *state's action is not complete until
> and unless it provides or refuses to provide a suitable
> postdeprivation remedy.*

*Id.* (footnote omitted) (emphasis added). The court con-cluded that the prisoner had several state common law remedies to recover compensation for his loss and that they were adequate. *Id.* at 534–36. The court added that whether the prisoner might not be able to recover under state remedies "the full amount which he might receive

in a [sec.] 1983 action is not . . . determinative of the adequacy of the state remedies." *Id.* at 535.

We apply the *Hudson* and *Parratt* holdings to Lewis's complaint to determine whether he has stated a claim. While his complaint alleges that Paschke and Young were engaged in a "concerted and systematic effort . . . to deprive plaintiff of constitutionally secured rights," the most reasonable inference from the specific facts alleged is that Paschke and Young misinterpreted or were poorly informed about prison rules. The gravest inference is that they intentionally disregarded those rules. Acts based on misinterpretation or ignorance of rules, or with intentional disregard for established state policy, are unauthorized actions by state officials and are random and unpredictable. For that reason, under *Parratt* and *Hudson,* the state's failure to provide a predeprivation remedy for losses resulting from such acts is not a deprivation of property without due process of law.

Nothing in Lewis's complaint indicates that the state cannot or will not provide him with an adequate remedy for his property loss. On the contrary, the law of Wisconsin provides adequate post-deprivation remedies for prisoners in Lewis's circumstances. If Paschke violated the prison rules when he confiscated Lewis's paper, a suit by Lewis against Paschke for replevin under ch. 810, Stats., is an adequate remedy to recover the paper. If Paschke cannot return it, Lewis may recover money damages in his replevin action for his loss. Sections 810.13 and 810.14, Stats. If the rules do not prohibit Lewis from receiving his improved typewriter, Paschke had a duty not to interfere, and Lewis may recover money damages from him under state tort law. Lewis's

complaint fails to show that the state has refused to permit him to pursue those remedies.

The Uniform Declaratory Judgments Act is in effect in Wisconsin. Section 806.04, Stats. Injunctive relief may be granted in aid of a declaratory judgment. *Town of Blooming Grove v. City of Madison,* 275 Wis. 328, 336, 81 N.W.2d 713, 717 (1957). Temporary and permanent injunctions may also be sought by an independent action. Sections 813.01 and 813.02, Stats. Lewis does not claim that declaratory or injunctive relief under this state's laws is inadequate. *See Easter House v. Felder,* 910 F.2d 1387, 1405 (7th Cir. 1990) *cert. denied,* 111 S. Ct. 783 (1991) (sec. 1983 action dismissed when injunctive relief under state law for deceptive trade practice was among meaningful post-deprivation remedies); *Wilmarth v. Town of Georgetown,* 555 N.E.2d 597, 602 (Mass. App. Ct. 1990) (sec. 1983 action dismissed when state declaratory judgment was adequate remedy). Lewis's complaint fails to show that the state has refused to permit him to seek declaratory or injunctive relief.

Lewis argues that the trial court violated his due process rights because it used state remedy statutes "as a device for overriding federally protected constitutional authority vested in" 42 U.S.C. sec. 1983. He correctly observes that because state remedies exist, a sec. 1983 action is unavailable. But that is because the United States Supreme Court has determined, with respect to property, that no constitutional violation occurs if there are adequate post-deprivation state remedies to compensate for the taking of the property. This state's remedies are not "devices."

Lewis argues that Paschke, with Young's assent, established a de facto state policy that led to a violation of his due process right. *See Hudson,* 468 U.S. at 531–33 (post-deprivation state remedies preclude sec. 1983

action only when the wrong was not pursuant to established state policy). We reject his argument as self-contradictory. Lewis's complaint also alleges that Paschke and Young violated prison system rules that would have allowed Lewis to receive the property. Since only one official policy can exist at a time, the defendants cannot have both made and failed to follow state policy.

We conclude that Lewis is not entitled to relief under 42 U.S.C. sec. 1983. Since his complaint does not seek relief by way of replevin, declaratory judgment or injunction under the law of Wisconsin, his complaint does not state a claim. The trial court properly dismissed his complaint.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* Increasingly, defendants subject to claims under 42 U.S.C. § 1983 defend, as defendants have done here, on the ground that the plaintiff has an adequate postdeprivation remedy and thus does not state a claim. The defendants are seemingly indifferent to the nature of the claims stated. However, the adequacy-of-a-postdeprivation-remedy defense is a "special application[ ] of the settled principles expressed in *Monroe* [*v. Pape,* 365 U.S. 167 (1961)] and *Mathews* [*v. Eldridge,* 424 U.S. 319 (1976)]." *Zinermon v. Burch,* 494 U.S. 113, 110 S. Ct. 975, 990 n.20 (1990). The defense is limited to certain procedural due process claims.

The principle settled in *Monroe,* is as follows:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

582

*Monroe v. Pape,* 365 U.S. 167, 183 (1961). "Thus, over-lapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983." *Zinermon,* 110 S. Ct. at 982.

The settled principle expressed in *Mathews,* is the weighing process which determines what procedural protections the Constitution requires in a particular case, as follows:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Thus, *Mathews* emphasizes that procedural due process is not concerned with the trivial.

The principles expressed in *Monroe* and *Mathews* have been obscured by such decisions as *Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1984). *Parratt* held that a § 1983 action did not lie against state officials for their random, unauthorized negligent act in losing a prisoner's $23.50 hobby kit. *Hudson* extended *Parratt's* random-unauthorized action doctrine to the intentional act of a prison guard who allegedly deliberately and maliciously destroyed a prisoner's personal property during a search of the prisoner's cell.

A number of federal courts of appeals have found *Parratt* inapplicable where the defendant state official had the state-clothed authority to effect a deprivation,

and had the power to provide the plaintiff with a hearing before they did so. *See Zinermon,* 110 S. Ct. at 978 n.2. Other courts of appeals have held that *Parratt* applies even to deprivations effected by the very state officials charged with providing predeprivation process. *Id.*

Probably no decision decided by the Court has provoked as much uncertainty and controversy as *Parratt.* Recognizing this, a sharply divided Court in *Zinermon,* attempted to place *Parratt* and *Hudson* in their proper context. *Zinermon* presented the ideal fact situation to do so.

In *Zinermon,* Darrell Burch brought a § 1983 action against officials of the Florida State Hospital, and others, alleging that they deprived him of his liberty, without due process of law, by admitting him to the hospital as a "voluntary" mental patient, when he was incompetent to give informed consent to his admission. The defendants, citing *Parratt* and *Hudson,* argued that Burch's complaint failed to state a claim because it alleged only a random, unauthorized violation of the Florida statutes governing admission of mental patients. The Court held, however, that Burch's complaint did state a claim under § 1983. *Zinermon,* 110 S. Ct. at 990.

The Court first stated the *Monroe* rule that the existence of a state remedy is generally irrelevant to the question of the existence of a cause of action under § 1983. The Court said: "This general rule applies in a straightforward way to two of the three kinds of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment." *Zinermon,* 110 S. Ct. at 983. The two kinds of § 1983 claims to which the *Monroe* rule applies "in a straightforward way" include those brought by a plaintiff for a state official's violation of his or her rights under specific protections defined in the Bill of Rights. Also, the due

process clause contains a substantive component that bars arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). The *Zinermon* court noted that as to these actions, the constitutional violation is complete when the wrongful action is taken. Therefore, the existence of a state-law remedy is irrelevant.

However, the due process clause also encompasses a third type of protection, a guarantee of fair procedure. *Zinermon,* 110 S. Ct. at 983.

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process . . .. [I]t is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Id.* In a fair-procedure case, applying the *Mathews v. Eldridge* test, the Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id.* at 984 (emphasis in original). *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985).

The *Zinermon* court continued, "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon,* 110 S. Ct. at 984 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982)) "(" 'the necessity of quick action by the State or the impracticality of providing any predeprivation pro-

cess,' " may mean that a postdeprivation remedy is constitutionally adequate, quoting *Parratt,* 451 U.S. at 539 . . ..)." *Id.*

The Court said:

> This is where the *Parratt* rule comes into play. *Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide.

*Id.* at 985. The Court explained that in *Parratt,* "[t]he very nature of a negligent loss of property made it impossible for the State to predict such deprivations and provide predeprivation process." *Id.*

The Court said that *Parratt* is not an exception to the *Mathews* balancing test, "but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue." *Id.* The State "cannot be required constitutionally to do the impossible by providing predeprivation process." *Id.*

The Court explained that *Hudson* is consistent with the *Parratt* doctrine, in that the state could not anticipate and control in advance the random, unauthorized intentional conduct of the prison guard. *Id.* at 985. The fact that the guard could "foresee" the wrongful deprivation was "of no consequence" because the proper inquiry is whether the *state* is in a position to provide for predeprivation process. *Id.* at 985–86.

The focus of those courts which have seized upon *Parratt* and *Hudson* as a way of disposing of § 1983 claims, has, erroneously, been on the availability of a postdeprivation remedy, and not on the ability of the

state to provide predeprivation process. That is the mistake of the majority. An act of a state official is "random and unauthorized" only if it was impossible for the state to predict the action and provide predeprivation process. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon,* 110 S. Ct. at 987. The exception is where a predeprivation hearing is unduly burdensome in proportion to the property or liberty interest at stake, or the state is truly unable to anticipate and prevent a random deprivation of a property or liberty interest. *Id.* at 987.

Applying these principles to Burch's claim, the Court concluded that the state could have provided predeprivation safeguards which would have prevented the hospital officials from making random and unauthorized errors in the admission process. *Zinermon,* 110 S. Ct. at 988-89. The Court explained:

> Florida chose to delegate to petitioners a broad power to admit patients to F.S.H., *i.e.,* to effect what, in the absence of informed consent, is a substantial deprivation of liberty. Because petitioners had state authority to deprive persons of liberty, the Constitution imposed on them the State's concomitant duty to see that no deprivation occur without adequate procedural protections.

*Id.* at 988.

The Court pointed out that, "Burch is not simply attempting to blame the State for misconduct by its employees. He seeks to hold state officials accountable for their abuse of their broadly delegated, uncircum-

587

scribed power to effect the deprivation at issue." *Id.* at 989.

The Court found that the case before it was not controlled by *Parratt* and *Hudson,* for three basic reasons:

First, the officials could not claim that the deprivation of Burch's liberty was unpredictable. *Zinermon,* 110 S. Ct. at 989. The state could have predicted that any erroneous deprivation would occur, if at all, at a specific, predictable point in the admission process—when a patient is given admission forms to sign. *Id.*

Second, providing predeprivation process was not impossible. In contrast to the situations in *Parratt* and *Hudson,* "had the State limited and guided petitioners' power to admit patients, the deprivation might have been averted." *Id.*

Third, the officials' conduct was not "unauthorized" in the sense the term was used in *Parratt* and *Hudson. Zinermon,* 110 S. Ct. at 990. The state had delegated to the officials the power and authority to "effect the very deprivation complained of here." *Id.* "The deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights . . . by an official's abuse of his position.' " *Id.* (quoting *Monroe,* 365 U.S. at 172).

Under the principles explained in *Zinermon,* Lewis states claims which are not satisfied by the existence of postdeprivation remedies, if, in fact, such remedies exist. It is the obligation of a reviewing court when presented with a prisoner's *pro se* document seeking relief to determine whether the petitioner may be entitled to any relief. *bin-Rilla v. Israel,* 113 Wis. 2d 514, 521, 335 N.W.2d 384, 388 (1983). We must look to the facts, not the *pro se* inmate's pleadings. *Id.* The facts are undis-

588

puted. Lewis assists other inmates in their legal work. His wife purchased at retail outlets and forwarded to him typing paper, a legal pad and a box of envelopes, which defendant Paschke, as the supervisor of the WCI property department, confiscated. Through his complaints to Superintendent Young, Lewis was able to get this property from Paschke. However, his wife then sent him two additional reams of typing paper, which Paschke confiscated. Lewis went through the same process but this time Young upheld Paschke's decision.

Lewis has an electronic memory typewriter which he sent out to have its memory expanded. When the typewriter was returned to WCI, Paschke confiscated it and claimed it was contraband because the added disc drive was not an integral part of the typewriter. Paschke permitted Lewis's wife to return the typewriter to the retail store and have its expanded memory removed. The typewriter was then returned to Lewis.

At the time, defendant Paschke operated under Internal Management Procedure No. 1, effective September 1, 1984. That procedure provided that, "Under certain conditions, inmate personal property is permitted to enter institutions through the mail from retail outlets, family and friends and on visits where authorized." Section 1-B permitted inmates to purchase an electronic typewriter. Personal property which could be obtained through the mail from retail outlets included stamped envelopes, stationery, typing paper, and carbon paper.

Lewis claims that denying him the right to purchase and receive from retail outlets typing paper, legal pads and envelopes violated his right to equal protection and to be free, under the substantive component of the due process clause, from the arbitrary denial of his access to such personal property. Thus, Lewis states two

589

claims—equal protection and substantive due process—which are unaffected by the existence of a postdeprivation remedy. I express no opinion as to the merits of his claims or others which arose after he began this action, but simply demur from the proposition that he does not state claims because of the existence of adequate postdeprivation remedies.

Further, Lewis claims that the denial of his right to acquire such personal property violated his right to procedural due process under the fourteenth amendment. I find that his claim falls within the perimeters outlined in *Zinermon*. First, the defendants cannot claim that the deprivation of Lewis's property interest was unpredictable. Any erroneous deprivation will occur, if at all, at a specific, predictable point in the acquisition process—when the property is received at WCI's property department. Second, it was not impossible to provide a predeprivation process before defendant Paschke confiscated Lewis's property and denied him possession of property under the internal management procedure. Third, the defendants cannot characterize their conduct as "unauthorized" in the sense that the term is used in *Parratt* and *Hudson*. The deprivation here is "unauthorized" only in the sense that Paschke's act was not sanctioned by state law, but was, instead, an abuse of his official position.

For these reasons, I conclude that Lewis states claims which are not satisfied by the existence of postdeprivation remedies. I dissent.