## STEVEN G. DRAGHETTI *vs.* STANLEY J. CHMIELEWSKI.

Hampden. October 4, 1993. - January 26, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Libel and Slander. Public Officer. Damages*, Libel. *Unlawful Interference. Emotional Distress.*

At a civil trial, the plaintiff's claim of defamation was properly submitted to the jury where the statements in question, imputing to the plaintiff an intention to commit a crime, were susceptible of a defamatory meaning. [811-812]

Statements published in a newspaper that were susceptible of a defamatory meaning were properly submitted to the jury at the trial of a defamation claim, even though they were not direct quotations. [812-813]

An employer has no conditional privilege to publish defamatory statements about an employee to a newspaper of general circulation [813-814]; nor did the employer, a chief of police, have a conditional privilege arising from his official duties to report internal investigations to the press [814]; nor was there a conditional privilege arising from any "common interest" of the police chief and citizens who read the newspaper [814].

This court declined to address an issue raised for the first time on appeal. [814-815]

Damages awarded in a defamation case were not excessive. [815-816]

At the trial of a claim of unlawful interference with contractual relations, the plaintiff introduced sufficient evidence of interference through either improper means or improper motive, and the defendant's motion for a directed verdict was correctly denied. [816-817]

At the trial of a claim of unlawful interference with advantageous business relations, there was no error in the nature, scope or form of the jury verdict form, where the judge's clear and correct instructions on the parties' burdens of proof and on the defense of justification enabled the jury to understand their duty in answering the questions that appeared on the form. [818-819]

Damages for emotional harm were properly awarded in a civil action on a claim for unlawful interference with contractual relations based on defamation, where such harm was foreseeable; nor were the damages excessive. [819]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1989.

The case was tried before *George C. Keady, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David A. Robinson (Thomas S. Locke & Christopher C. Johnson* with him) for the defendant.

*Stewart T. Graham, Jr.*, for the plaintiff.

ABRAMS, J. The defendant, Stanley J. Chmielewski, appeals from a jury verdict in favor of the plaintiff, Steven G. Draghetti, on claims of defamation and interference with business and contractual relations. At issue on the defamation claim was whether Draghetti's defamation claim should have been submitted to the jury because statements attributed to Chmielewski in a newspaper article were not direct quotations. At issue on the claims for interference with business and contractual relationships was the sufficiency of the evidence. We transferred the appeal to this court on our own motion. We affirm.

In his complaint, Draghetti alleged causes of action for unlawful interference with contractual relations (count I); unlawful interference with advantageous business relations (count II); defamation (count III); and intentional infliction of emotional distress (count IV). Chmielewski moved for a directed verdict on all counts. A judge in the Superior Court allowed the motion on count IV. The jury found Chmielewski liable on the defamation claim in the amount of $50,000, and on the claims for interference with business and contractual relations in the amount of $32,760.[1] Chmielewski moved for a new trial, or in the alternative, for a remittitur of damages. The judge denied Chmielewski's motions. Chmielewski appeals.

*Facts.* Steven G. Draghetti is a police officer in the town of Agawam. In 1987, Draghetti also had a second part-time job as an instructor at the Massachusetts Criminal Justice Center (academy), the Commonwealth's regional police

---

[1]The judge limited recovery on counts I and II to a single recovery.

training academy. Stanley J. Chmielewski is chief of police in Agawam.

On March 17, 1987, Draghetti injured his back while on duty as a police officer. His physician recommended four days' rest. On March 19, 1987, Draghetti was scheduled to teach a class at the academy. He arranged for a substitute teacher. Because the teacher was inexperienced, Draghetti attended the class in order to lend assistance, should the substitute need help. Police officers are forbidden to work while on the injured roster. Draghetti submitted no payment voucher for the March 19 class. The substitute teacher was paid for teaching at the academy that day.

Agawam police Captain Richard Light received a report that Draghetti was at the academy in uniform on March 19. He ordered an investigation and reported the incident to Chmielewski. On March 23, 1987, Light informed Draghetti that he had dropped the investigation because there was no evidence of a conflict of interest.

On March 31, 1987, Chmielewski wrote a letter to the director of the academy which stated, in relevant part: "Draghetti . . . has a problem with scheduling his time between his responsibilities at the Agawam Police Department and the Academy. It is for this reason that I feel for the best of all concerned you replace him as an instructor as soon as possible." Shortly thereafter, the academy replaced Draghetti as an instructor.

In 1989, the district attorney's office for the Hampden district commenced an investigation into the allegations that another Agawam police officer, Lieutenant Robert Campbell, received payment both for teaching and for police duty for the same shift. At that time, the district attorney's office also investigated the earlier allegations against Draghetti.

In March, 1989, a reporter for a local newspaper talked with Chmielewski with regard to the district attorney's investigation of Draghetti and Campbell. An article appeared in the March 23, 1989, edition of the Springfield Union-News, which the plaintiff alleged defamed him in the headline and

first two paragraphs.[2] Six months later, a different Union-News reporter interviewed Chmielewski, and a second article appeared on September 26, 1989.[3] At trial, Draghetti testified that the two Union-News articles caused him emotional stress. Other officers ridiculed him at work. At home, he began having marital troubles. As of the trial date in January, 1991, Draghetti had not resumed teaching at the academy.

*Defamation.* Chmielewski contends that the defamation claim should not have been submitted to the jury because the statements were not defamatory and did not accuse Draghetti of any wrongdoing. Chmielewski further argues that, since the articles contained no direct quotations from him, he should not be held responsible for their impact.

The test whether a publication is defamatory is whether, in the circumstances, the writing discredits the plaintiff "in the minds of any considerable and respectable segment in the community." *Tropeano* v. *Atlantic Monthly Co.*, 379 Mass. 745, 751 (1980), quoting *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). Where a communication is susceptible of both a defamatory and nondefamatory meaning, a question of fact exists for the jury. *Jones* v. *Taibbi*, 400 Mass. 786, 792 (1987).

---

[2]The headline stated: "County probes 2 Agawam police on double-dipping allegations." The article read, in relevant part: "The Hampden County District Attorney's office is investigating allegations that a ranking town police officer and a patrolman were paid for teaching at the regional police academy while they were on duty and also being paid by the town. Police chief Stanley Chmielewski yesterday confirmed that the allegations against Lt. Robert D. Campbell and Officer Stephen Draghetti were referred to the district attorney's office after being checked out by the department."

[3]The article published on September 26, 1989, read, in relevant part, as follows: "A second officer, Patrolman Stephen Draghetti, had also been investigated on similar charges. Chmielewski said there was evidence that Draghetti, who had been hired to teach at the academy last year, intended to collect pay for teaching at the academy while on duty. However, academy and police records showed that he did not collect paychecks from both the academy and city for hours when he was on duty, Chmielewski said. Draghetti was not allowed to teach at the academy for several months as a penalty. He is expected to resume teaching there during his off-duty hours shortly, Chmielewski said."

The March 23 article states that Chmielewski "confirmed that the allegations against . . . Draghetti were referred to the district attorney's office after being checked out by the department." Chmielewski's statements could reasonably be understood to convey the message that the police department had investigated allegations against Draghetti and found sufficient cause to refer them to the district attorney for criminal investigation. In fact, the internal investigation revealed that there was insufficient cause to warrant a criminal investigation. The September 26 article reported, "Chmielewski said there was evidence that Draghetti . . . intended to collect pay for teaching at the Academy while on duty." Collecting pay for teaching while on duty is a crime. Chmielewski's statements reasonably could be understood to mean that there was evidence that Draghetti intended to commit a crime. There was no such evidence. Imputation of a crime is defamatory per se. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 853 (1975). Thus, Chmielewski's statements were susceptible of a defamatory meaning.

Chmielewski argues that the statements were not direct quotations. Chmielewski is not immune from liability simply because the statements were not direct quotations. "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." *Correllas* v. *Viveiros,* 410 Mass. 314, 319 (1991).[4] Presence of quotation marks is not an element of the tort, and is not required.[5] Chmielewski does not claim that his re-

---

[4]Defamation encompasses the torts of libel and slander — the one being in general written while the other in general is oral. Prosser and Keeton, Torts § 111, at 771 (5th ed. 1984). We need not decide whether Chmielewski's statments constituted libel, slander, or both. The published material discredited the plaintiff "in the minds of [a] considerable and respectable segment of the community." *Tropeano, supra* at 751.

[5]Chmielewski's reliance on *Masson* v. *New Yorker Magazine, Inc.,* 501 U.S. 496 (1991), is misplaced. *Masson* dealt with an issue entirely distinct from the present case. There, the United States Supreme Court held that a deliberate alteration of words by a reporter does not equate with knowledge of falsity for purposes of *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), unless the alteration results in a material change in the meaning of the words. Contrary to Chmielewski's assertion, the Supreme Court

marks were deliberately altered by the reporters. At trial, he did not recall exactly what he had said or if he had spoken to reporters at all. Two reporters testified that they interviewed Chmielewski, and that the articles accurately reported statements he made to them. The statements reported in the articles were susceptible of a defamatory meaning. We conclude that the judge properly denied Chmielewski's motion for a directed verdict.

b. *Conditional privilege.* Chmielewski maintains that, even if the articles defamed Draghetti, the statements were conditionally privileged.[6] He offers three bases for the privilege: (1) the statements were reasonably necessary to serve the police department's legitimate interest in Draghetti's fitness to perform his job; (2) the statements were made by a public official while performing his official duties; (3) Chmielewski and the citizens who read the Union-News had a common interest in the communications.

Chmielewski asserts that as police chief he had a right, even a duty, to speak to the press about Draghetti. We do not agree. In those cases in which we have held that an employer has a conditional privilege to make defamatory statements,[7] the statements were published to a narrow group

---

explicitly stated that the use of quotation marks was not dispositive in the inquiry whether there was a material alteration. *Masson, supra* at 517.

[6]Draghetti argues that Chmielewski has waived this issue by not requesting a jury instruction on the common law conditional privilege. In fact, Chmielewski did seek such an instruction. He requested that the judge instruct as follows: "Plaintiff defamed by statements made by his employer had burden to prove statements were made recklessly, where information was reasonably related to the employer's legitimate business interests. *Foley v. Polaroid Corp.*, 400 Mass. 82 (1987)." Thus, the issue of conditional privilege is properly before us.

[7]See *Bratt v. International Business Machs. Corp.*, 392 Mass. 508 (1984) (memorandum sent from director of personnel to other supervisors regarding employee's mental health); *Foley v. Polaroid Corp.*, 400 Mass. 82 (1987) (statements made by Polaroid executives to other executives and an employee representative); *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 520 (1961) (mercantile agency submitted credit information to a client); *Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532, 538 (1969) (information provided by citizen to police regarding a crime).

who shared an interest in the communication. In none of the cases did the employer publish the defamatory statements to a newspaper of general circulation. The judge properly rejected Chmielewski's requested jury instruction. At oral argument, defense counsel conceded that, although the chief of police has broad powers of regulation, that does not include regulation through the newspapers.

Similarly, a police chief has no official duty to report internal investigations to the press. The conditional privilege to publish defamatory material is designed to allow public officials to speak freely on matters of public importance in the exercise of their official duties. *Mulgrew* v. *Taunton*, 410 Mass. 631, 635 (1991). See W. Prosser & W. Keeton, Torts § 115, at 830 (1984). In *Mulgrew*, we said that a police chief had a conditional privilege to inform a committee of the city council about a police officer's past performance because "[t]he public has an interest in having a police force comprised of competent and able individuals." *Mulgrew* v. *Taunton, supra.* Chmielewski was not communicating with individuals charged with the responsibility of police administration, as was the defendant in *Mulgrew*. Statements made by Chmielewski during the original investigation of Draghetti might have been privileged if made to persons concerned with the investigation.

Last, Chmielewski asserts that he and the citizens who read the Union-News share a "common interest" in the communication which entitles him to a qualified privilege. Such a distortion of the meaning of the "common interest" privilege would create a privilege for virtually all newsworthy statements.[8] We conclude that Chmielewski's remarks to the Union-News were not conditionally privileged.

c. *Draghetti's status as a public figure.* Chmielewski seeks to raise the issue, for the first time on appeal, of Draghetti's

---

[8]Draghetti also argues that Chmielewski's claim of privilege is defeated because the evidence showed he acted with actual malice. Because we have determined that Chmielewski's statements did not fall within the conditional privilege, we need not reach the issue whether the evidence was sufficient for the jurors to conclude that actual malice was proved.

status as a public figure. The issue of plaintiff's status as a public figure was neither pleaded nor argued to the court below. Chmielewski concedes he did not raise this issue at trial. Chmielewski's trial strategy was to try the case on the theory of conditional privilege and justification. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 n.25 (1991).

Chmielewski asserts that the judge should have raised the public figure issue sua sponte.[9] We do not agree. It is not a judge's function to be the trial strategist for any litigant. The judge was not required to interfere with trial counsel's strategy. Dissatisfaction with a trial strategy that did not achieve the result desired by a litigant is not trial error by a judge. The issue of Draghetti's status as a public figure was not raised and thus is not before us.[10]

*Damages.* Chmielewski challenges the jury's $50,000 defamation award as excessive. Damages in a defamation case are limited to actual damages, which are compensatory for the wrong that has been done. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 860 (1975). Actual injury includes not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the

---

[9]Previously, we have said, "[T]he weight of authority leans toward classifying police officers as public officials." *Fleming* v. *Benzaquin*, 390 Mass. 175, 189 (1983).

[10]Because the issue whether Draghetti was a public figure was not raised, Chmielewski's reliance on *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984), is misplaced. We apply the independent review doctrine to those public figure cases where the "actual malice standard" is submitted to the jury. In order to insure that the judgment does not constitute a forbidden intrusion on the field of free expression, we must be satisfied that the record establishes "actual malice" by clear and convincing evidence. *McAvoy* v. *Shufrin*, 401 Mass. 593, 597 (1988). Because the "actual malice" standard is inapplicable, so too is the *Bose* independent review doctrine.

community, personal humiliation, and mental anguish and suffering. *Id.* at 861.

The articles were published in a newspaper of general circulation throughout the area. In essence, they accused Draghetti, a police officer, of a crime. Draghetti testified that he was ridiculed by his colleagues, a strong indication that his reputation had been damaged. He experienced emotional distress, which resulted in marital stress and physical symptoms. There was no error.

*Unlawful interference.* Chmielewski challenges the sufficiency of the evidence on Draghetti's claim of unlawful interference with contractual relations. A plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. See *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.,* 410 Mass. 262, 272 (1991). See also *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811 (1990).

In reviewing the denial of Chmielewski's motion for a directed verdict, we must view the evidence in the light most favorable to Draghetti. *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 876 (1978). Draghetti claims that Chmielewski knowingly interfered with his contract with the academy through both improper means and improper motive.[11] The alleged improper means was the March 31, 1987, letter containing the false statement that Draghetti "has a problem with scheduling his time between his responsibilities at the Agawam Police Department and the Academy." As a result of the letter, the director of the academy terminated Draghetti's employment.

Chmielewski contends that the letter could not be considered improper means because he could have ordered Dra-

---

[11]There was evidence of improper motive and means. Draghetti only need offer evidence of either improper means *or* motive. Draghetti did not have to prove both. *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.,* 410 Mass. 262, 272 (1991).

ghetti directly to stop teaching. Chmielewski relies on *Wilmarth* v. *Georgetown*, 28 Mass. App. Ct. 697 (1990), which held that municipal supervisors have broad authority over the off-duty private employment of police officers. *Wilmarth* made clear, however, that supervisors may impose only those conditions which are not unreasonable. *Wilmarth* v. *Georgetown, supra* at 702. Supervisors do not have blanket authority to interfere with the contractual relations of their employees. Even if Chmielewski could have accomplished the same result by proper means, he may not use the improper means of misrepresentation. See Restatement (Second) of Torts § 767 (*a*) comment c (1977).[12] Chmielewski himself testified that he knew Draghetti had no scheduling conflict when he wrote to the academy. The letter made it appear that Draghetti was neglecting his duties at the police department in order to teach at the academy. That was false, and Chmielewski knew it to be false. There was sufficient evidence from which a jury could find that Chmielewski misrepresented Draghetti's "scheduling problem."

With respect to Chmielewski's improper motive, there was evidence of "strained relations" between Draghetti and Chmielewski prior to March, 1987, due to Draghetti's union activities. Moreover, a physical confrontation between Draghetti and Chmielewski nearly developed after Draghetti's testimony on behalf of a police officer whom Chmielewski had suspended. Chmielewski treated Draghetti more severely than another officer who had actually been teaching while on duty. From this evidence, a jury could have concluded that Chmielewski's decision to write the director of the academy was based on retaliation or ill will toward Draghetti, rather than the good of the police department. There was sufficient evidence that Chmielewski's conduct was based on an improper motive.

---

[12]Comment c states: "Thus, physical violence, fraudulent misrepresentation, and threats of illegal conduct are ordinarily wrongful means and subject their user to liability even though he is free to accomplish the same result by more suitable means."

*Justification.* Chmielewski objected to the omission, on the jury verdict form, of a question on justification on the issue of interference with advantageous relations.[13] The "nature, scope, and form of special questions submitted to a jury pursuant to Mass. R. Civ. P. 49 (*a*) . . . are matters within the discretion of the trial judge." *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 802 (1987), quoting *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 291 (1978). We view the questions submitted to the jury in light of the instructions given by the judge. *Id.* The judge properly instructed the jury that the plaintiff had the burden of proving that the defendant's conduct was intentional and improper. The judge's instruction on justification also was correct. The judge instructed the jurors on Chmielewski's burden of proof on the affirmative defense of justification. Chmielewski does not argue that the instructions were incorrect or unclear.[14] The instructions

---

[13]The second question on the jury verdict form read as follows: "Did said defendant intentionally and maliciously interfere with any advantageous relationship said plaintiff had with said Center?" As discussed *infra* at note 14, it was error to include malice in the the judge's instruction and on the verdict form. However, Chmielewski was not prejudiced by that error. Chmielewski now objects to the first question on the jury verdict form which read, "Did the defendant, Stanley J. Chmielewski, intentionally interfere with any contractual relationships the plaintiff, Steven G. Draghetti, had with the Massachusetts Criminal Justice Training Center?" That issue is not before us because Chmielewski did not object to that question at trial.

[14]The judge instructed the jury that justification was an affirmative defense to the torts of unlawful interference with contractual relations and unlawful interference with advantageous business relations. On the claim of unlawful interference with advantageous business relations, the judge also instructed the jury that Draghetti must prove that Chmielewski intentionally and *maliciously* interfered with the relationship. The judge interpreted incorrectly a footnote in our decision in *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811 (1990), to apply only to the tort of unlawful interference with contractual relations. *Geltman, supra* at 815 n.6. Malice is no longer an element of either tort; it has been replaced by the concept of improper motive or means. *Geltman, supra* at 816. Chmielewski did not object to the instruction on malice. He now concedes that the judge's instruction on advantageous business relations was mistaken. The mistake, however, was not prejudicial to Chmielewski as it required Draghetti to prove malice.

enabled the jury to understand their duty in answering the questions on the verdict form. *Id.* at 802. *Charles L. Hazelton & Son* v. *Teel*, 349 Mass. 617, 620 (1965).

*Emotional distress.* Last, Chmielewski contends that Draghetti cannot recover for emotional harm or loss of self-esteem on his unlawful interference claim. Massachusetts cases have followed the rule of the Restatement in allowing such damages if they were foreseeable. See Restatement (Second) of Torts § 774A (1) (*c*) (1977) (damages may include emotional distress or actual harm to reputation if they are reasonably expected to result from the interference); *Mailhiot* v. *Liberty Bank & Trust Co.*, 24 Mass. App. Ct. 525, 528 (1987); *Gould* v. *Kramer*, 253 Mass. 433, 440 (1925). Given the nature of the defamatory statements, it was foreseeable that Draghetti would be scorned by other police officers. The damages, including those for emotional distress, were not excessive in the circumstances.

*Judgment affirmed.*