John Cavicchi *vs.* William T. Koski & another.[1]

No. 05-P-1358.

Suffolk. April 6, 2006. - October 31, 2006.

Present: Greenberg, Duffly, & Kafker, JJ.

*Attorney at Law,* Contingent fee agreement. *Contract,* Interference with contractual relations. *Consumer Protection Act,* Unfair or deceptive act.

This court concluded that a civil complaint alleging that a certain attorney made knowingly false and defamatory statements about another attorney to that attorney's clients that induced the clients to discharge him stated a cause of action based on tortious interference with advantageous business relations by improper means [657-661]; as to the complaint's allegations concerning tortious interference with contractual relations, the complaint could not stand to the extent that the claim was grounded in an allegation that the clients breached their contingent fee contracts with the attorney by terminating his services in anticipated civil actions for wrongful incarceration; however, the complaint did state such a claim as to the failure to pay the attorney's fee for completed services in a concluded criminal matter [661-662].

A Superior Court judge properly dismissed a claim brought under G. L. c. 93A, § 11, by one attorney against another attorney with whom he associated for purposes of representing certain clients, where the transactions of those engaged in an intra-enterprise disputes did not fall within the scope of G. L. c. 93A. [662-663]

Civil action commenced in the Superior Court Department on October 31, 2002.

A motion to dismiss was heard by *Ralph D. Gants,* J.

*Anthony M. Maio* for the plaintiff.

*Marion M. Kearns* for the defendants.

Duffly, J. Attorney John Cavicchi succeeded in having the conviction of his client, Peter J. Limone, vacated and was then retained by Limone to represent him in an anticipated civil damage suit for wrongful incarceration. Soon after Limone's

[1]Koski & Kearns, LLP.

release from prison in January, 2001, Cavicchi and the defendant, Attorney William T. Koski, who had assisted in the criminal matter, entered into a written contingent fee agreement with Limone governing representation in the anticipated civil action; later agreements added two attorneys and additional claimants. When Cavicchi was subsequently discharged by the clients, he filed a complaint in Superior Court against Koski and his law firm, asserting theories of tort liability and violations of G. L. c. 93A, § 11.[2] All four counts of the complaint were dismissed and Cavicchi filed this appeal.

*Discussion.* The dismissal of a complaint pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974), will be affirmed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). "The allegations in the complaint will be treated as true, and the plaintiff is entitled to all favorable inferences as well." *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.,* 413 Mass. 583, 584 (1992). See *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College,* 445 Mass. 745, 748-749 (2006).

According to the complaint, Cavicchi was responsible for causing Limone's 1968 murder and conspiracy convictions to be vacated in January, 2001; Cavicchi did not submit a bill to Limone at that time. Later in January, following Limone's release from prison, he entered into a contingent fee agreement with Cavicchi and Koski, governing the compensation arrangement in connection with their representation of Limone in a civil suit seeking damages for wrongful incarceration. Some months after this initial agreement had been signed, Cavicchi and Koski entered into additional contingent fee agreements — one with Limone and members of Limone's family, and another

---

[2]The complaint asserts claims of intentional interference with an advantageous contractual relationship in counts I (against Koski) and III (against Koski & Kearns, LLP) and violations of G. L. c. 93A, § 11, in counts II and IV (against Koski and his law firm, respectively). The theory of recovery against the law firm appears to be grounded in a relationship of agency or respondeat superior with Koski, rather than in any independent acts of the firm. This theory was not challenged by the defendants nor addressed by the motion judge. Neither do we address it.

with the administrator of the estates of Henry Tameleo (whose conviction had also been vacated) and Jeanette Tameleo (collectively, the clients), in connection with the wrongful incarceration of Limone and Tameleo.[3]

In August, 2002, Cavicchi was discharged by Limone and the Limone family members from representing them and the Tameleos in the civil matter.[4] Cavicchi then sent Limone a bill for $99,400, in connection with services rendered in the criminal matter, but Limone refused to pay the bill, asserting that the services had been provided on a pro bono basis. Cavicchi alleges that at all relevant times, he and Limone "maintained an excellent business relationship," and that Koski "did intentionally encourage, instruct and/or command . . . Limone to not pay [Cavicchi's] bill" for services rendered in connection with the criminal proceedings.

Additional allegations of particular relevance to the claims on appeal (and denied by the defendants, though we assume their truth for the purposes of our discussion), are set out below:

> "Upon information and belief, . . . Koski . . . instituted an intentional and malicious interference with the intention to undermine [Cavicchi's] professional and contractual agreements with [the clients], by secretly disparaging [Cavicchi's] good name and reputation, and unfairly and deceptively instructing [the clients] to breach their contracts with [Cavicchi].
>
> " . . .
>
> "Upon information and belief, . . . Koski . . . maliciously and intentionally made material misrepresentations to [the clients] about . . . Cavicchi.
>
> " . . .

---

[3]Two other attorneys, not parties to this action, were also engaged by the clients and entered into the later fee agreements along with Cavicchi and Koski.

[4]The caption of the letter discharging Cavicchi purported to include the Tameleos, although the letter was signed only by Limone and his family. No party has suggested that Cavicchi was not discharged by the Tameleos. Cavicchi withdrew from representing the Tameleos as well as the Limones, and his complaint encompasses the services he would have provided to both families.

"The aforementioned conduct of . . . Koski . . . was done knowingly with the intention of terminating the contractual relationship between . . . Cavicchi . . . and [the clients], in order to advance his own economic interest."

1. *Interference with contractual or advantageous business relations.* The complaint alleges that Koski interfered with advantageous contractual relationships and with advantageous business relationships by inducing the clients to refuse to pay Cavicchi for services rendered in connection with the criminal matter and to terminate their contracts with Cavicchi in connection with the civil actions for wrongful incarceration. The substantive elements of these torts are substantially similar. See *Shafir* v. *Steele*, 431 Mass. 365, 370 n.10 (2000). "In order to make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 191 (1998). To make out a claim of tortious interference with contractual relations, a plaintiff must demonstrate that "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Draghetti* v. *Chmielewski*, 416 Mass. 808, 816 (1994). "[I]mproper conduct, beyond the interference itself, is 'an element both in the proof of intentional interference with performance of a contract . . . and in the proof of intentional interference with a prospective contractual relationship.' " *Hunneman Real Estate Corp.* v. *Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 427 (2002), quoting from *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 816 (1990).

The only substantive element at issue in this appeal is the defendants' interference through improper conduct with Limone's agreement to pay Cavicchi's fee in the criminal matter and Cavicchi's anticipated legal representation of the clients in

the civil suit. The improper conduct "may include ulterior motive (e.g., wishing to do injury) or wrongful means (e.g., deceit or economic coercion)," *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 412 (1991), *S.C.*, 412 Mass. 703 (1992); the plaintiff need not prove both. *Draghetti* v. *Chmielewski*, 416 Mass. at 816 n.11.[5] Improper means include violation of a statute or common-law precept, e.g., by means of threats, misrepresentation, or defamation. *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. at 817. As to improper motive, evidence of retaliation or ill will toward the plaintiff will support the claim. *Draghetti* v. *Chmielewski, supra* at 817. Contrast *United Truck Leasing Corp.* v. *Geltman, supra* (defendant's "motives were to benefit his customers and himself financially"; insufficient evidence to "warrant a finding that his real motive . . . was to hurt [plaintiff]"). See generally Restatement (Second) of Torts § 767 (1979) (setting forth factors to consider in determining whether an interference is improper in motive or means).

a. *Interference with advantageous business relations.* To the extent that Cavicchi's claim rests on Koski's interference by improper motive with Cavicchi's representation of the clients in the civil matter, (i.e., that Koski disparaged Cavicchi "with the intention of terminating the contractual relationship between [Cavicchi] and [the clients] in order to advance his own economic interest"), it is precluded, on policy grounds, by *Walsh* v. *O'Neill*, 350 Mass. 586, 589-590 (1966) (declining "to extend to the attorney client relationship the principle that interference with an existing business relationship, if malicious or without justification, is actionable [where] the relationship is not founded in a contract").[6]

Here, the complaint also sets forth a claim for tortious interference by improper means by asserting that Koski know-

---

[5]An earlier requirement that the interference be malicious was clarified in 1990, when the court, in *United Truck Leasing Corp.* v. *Geltman*, replaced the term "maliciously" with the term "improperly," 406 Mass. at 816, except in circumstances not relevant here. See *Sklar* v. *Beth Israel Deaconess Med. Center*, 59 Mass. App. Ct. 550, 554 & n.6 (2003).

[6]Although Cavicchi had contingent fee agreements to represent the clients in the civil matter, they did not breach the agreements by terminating his services. See our discussion in part b, *infra*.

ingly made material misrepresentations to the clients about Cavicchi's reputation that induced the clients to discharge him.[7] The defendants argue that *Walsh* (in which the court rejected an attorney's claim against two other attorneys for tortious interference with a professional relationship) also precludes Cavicchi's claim of interference by improper means. We disagree.

The defendants here correctly observe that Cavicchi's complaint contains an allegation similar to that in count 1 of the complaint in *Walsh*, wherein it was alleged that the defendants, inter alia, circulated libelous statements about the plaintiff. 350 Mass. at 588. However, count 1 of the *Walsh* complaint also included claims for abuse of process and interference with a professional relationship. Faced with the prospect that the court would dismiss count 1 not on the merits, but for "confusing multiplicity,"[8] *id.* at 589, the plaintiff abandoned the libel and abuse of process claims and asked the court to address only the tortious interference claim. This the court did, limiting its analysis to consideration whether interference "if malicious or without justification[] is actionable . . . ." *Id.* at 589-590. While holding that no such action could lie in the context of interference with an attorney-client relationship in the absence of a contract, the court nevertheless observed, "If the interferer uses unlawful means, of course, a cause of action arises." *Id.* at 590 n.1, citing *Godin* v. *Niebuhr*, 236 Mass. 350, 351-352 (1920) (upholding verdict finding interference with another's business, where interference was carried out by "the harmful circulation of libellous statements for the purpose of injuring the business of another").

---

[7]That the complaint adequately states a claim for defamation is not at issue. See *White* v. *Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004) (plaintiff in defamation suit "must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss" [footnote omitted]).

[8]*Walsh* predates both *Nader* v. *Citron*, 372 Mass. 96 (1977), and the Massachusetts Rules of Civil Procedure. As to pleading practice before the rules were adopted, see G. L. c. 231, § 7. With regard to pleading multiple causes of action, see G. L. c. 231, § 7, Fourth; *Downs* v. *Hawley*, 112 Mass. 237, 241 (1873) ("objection that each count contained two distinct causes of action[] should . . . [be] taken by demurrer").

We therefore conclude that the complaint, indulgently read as it must be at this stage, see *Nader* v. *Citron*, 372 Mass. at 98, states a cause of action based on interference by improper means.[9]

Nor are we persuaded that policy concerns should dictate a contrary result. The *Walsh* court, in dismissing the claim of interference, articulated "a strong public policy to assure one in need of legal help freedom to select an attorney, to change attorneys, and to seek and obtain advice as to the competency and suitability of any attorney for the particular need of the client." 350 Mass. at 590, citing Restatement of Torts § 772 (1939). That section of the Restatement, as appearing in the Restatement (Second) of Torts § 772, at 50 (1979), provides:

> "One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice."[10]

A client's ability to obtain honest advice or information about

---

[9]Although the complaint does not set out the false statements allegedly made by Koski, the allegations are sufficient to resist a motion to dismiss. Contrast earlier practice, requiring that "[i]n actions of tort for slander, it is necessary to set forth substantially the words spoken of the plaintiff, by which the defamatory accusations of which he complains were made." *Lee* v. *Kane*, 6 Gray 495, 496 (1856).

[10]The commentary to § 772 notes:

> "The rule as to honest advice applies to protect the public and private interests in freedom of communication and friendly intercourse. In some instances the rule protects the public and private interests in certain professions or businesses. Thus the lawyer, the doctor, the clergyman, the banker, the investment, marriage or other counselor, and the efficiency expert need this protection for the performance of their tasks. But the rule protects the amateur as well as the professional adviser. The only requirements for its existence are (1) that advice be requested, (2) that the advice given be within the scope of the request and (3) that the advice be honest. If these conditions are present, it is immaterial that the actor also profits by the advice or that he dislikes the third person and takes pleasure in the harm caused to him by the advice."

Restatement (Second) of Torts § 772 comment c, at 50-51 (1979). The commentary goes on to state: "It is sufficient for the application of this rule that

an attorney's competence, including information that disparages or is critical about the attorney's abilities (even if offered to induce the client to change counsel), furthers the important public policy that clients have the unfettered ability to select attorneys of their own choosing. That policy is not advanced by permitting an attorney to make knowingly false and defamatory statements about another attorney.[11]

b. *Tortious interference with contractual relations.* As to the contingent fee agreements in the civil matter, we conclude that the claim for tortious interference with a contract cannot lie. These agreements govern compensation; they do not (nor could they) prohibit the clients from discharging their attorneys. See *Malonis* v. *Harrington,* 442 Mass. 692, 696 (2004) (noting principle that it is "uniformly recognized that [a] client has [an] unquestioned right to discharge [his] attorney, with or without cause"). Therefore, to the extent the claim is grounded in an allegation that the clients "breach[ed] their contracts with [Cavicchi]" by terminating his services in the civil matter, it cannot stand. Compare *id.* at 697 n.6, citing *Opert* v. *Mellios,* 415 Mass. 634, 636-637 (1993) ("after substantial performance, bad faith termination might permit attorney to recover under contingency fee contract").

The complaint does, however, state a claim for tortious interference with contractual relations as to the failure to pay Cavicchi's fee in the criminal matter. Cavicchi can endeavor to prove that Koski, with improper motive or means,[12] induced Li-

the actor gave honest advice within the scope of the request made. Whether the advice was based on reasonable grounds and whether the actor exercised reasonable diligence in ascertaining the facts are questions important only in determining his good or bad faith. But no more than good faith is required." Restatement (Second) of Torts, *supra,* comment e, at 51.

[11]Indeed, the Massachusetts Rules of Professional Conduct provide that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Mass.R.Prof.C. 8.4(c), 426 Mass. 1429 (1998). See Mass.R.Prof.C. 7.1, 426 Mass. 1418 (1998) ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it: . . . [c] compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated").

[12]*Walsh* does not appear to preclude claims grounded in improper motive where the client (here, Limone) was induced to breach a contract with the

mone to refuse to pay Cavicchi's fee in the criminal case, thus breaching his contract with Cavicchi.

2. *Chapter 93A, § 11, claims.* Cavicchi argues that Koski violated G. L. c. 93A, § 11, by making "false and disparaging statements" about him to their clients, and thereby "wrongfully induced [the] clients to breach their contract . . . and/or deprived Cavicchi of the fruits of his labor."

Whether G. L. c. 93A, § 11, applies to Koski's allegedly improper communications with his and Cavicchi's clients "requires a dual inquiry: first, the court assesses whether the interaction is 'commercial' in nature, and second, it evaluates whether the parties were both engaged in 'trade or commerce,' and therefore acting in a 'business context.' " *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 22-23, cert. denied, 522 U.S. 1015 (1997). "It is clear as matter of law that . . . internal disputes that are intra-enterprise, i.e., between parties in the same venture, do not fall within the scope of c. 93A, § 11." *Steele* v. *Kelley*, 46 Mass. App. Ct. 712, 726 (1999). "Chapter 93A does not apply to internal disputes between parties who associated 'in the interests of forming a business venture together.' *Szalla* v. *Locke*, 421 Mass. 448, 451-453 (1995) (parties who serve different roles in formation of business are involved in 'same venture' so long as they contributed to project)." *Lattuca* v. *Robsham*, 442 Mass. 205, 209 (2004). See *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 467 (1982) ("as a matter of statutory construction, . . . § 11 was intended to apply only to dealings between legally separate 'persons' engaged in arm's length transactions, and not to dealings between members of a single legal entity like a partnership" [footnote omitted]).

The plaintiff's theory of this case, as argued on appeal (and as also may be inferred from the allegations of the complaint), is that the two attorneys agreed to associate for the purposes of representing Limone in the criminal matter and, subsequently, all of the clients on a contingent fee basis in an anticipated action for civil damages that would have been profitable for both Cavicchi and Koski. According to Cavicchi, this was a joint

plaintiff. See *id.* at 589, citing *Herbits* v. *Constitution Indem. Co.*, 279 Mass. 539 (1932); *Tauro* v. *General Acc. Fire & Life Assur. Corp.*, 297 Mass. 234 (1937).

venture; Koski breached his obligations to his coventurer, Cavicchi, when he engaged in conduct that was intended to induce the clients to discharge Cavicchi in the civil matter while Koski continued to represent them and to refuse to pay Cavicchi's bill for Limone's criminal case.

On these facts, Cavicchi and Koski were engaged in an intraenterprise dispute and their transactions do not fall within the scope of c. 93A. There was no error in the dismissal of the claims based on violations of this statute.

*Conclusion.* Insofar as counts I and III of the complaint allege tortious interference with contractual or advantageous business relations by inducing the clients to breach their contract to pay the plaintiff for his services in the criminal matter or tortious interference with advantageous business relations by inducing the clients, through improper means, to terminate the plaintiff's services in the civil matter, the judgment is reversed. In all other respects the judgment is affirmed.

*So ordered.*