The plaintiff, Wright Group, Inc., appeals from Superior Court judgments entered against it after the allowances of motions made by the defendants, Jan Patrick Kannally and Northeastern Forensics, Inc.,[3] to dismiss and for summary judgment.[4] The plaintiff also challenges the denial of its motion to amend its complaint. We affirm.
The plaintiff alleged four causes of action in its complaint against the defendants. Count I alleged that the defendants misappropriated the plaintiff's trade secrets, in violation of G. L. c. 93, § 42. Count II alleged that Kannally breached his duty of loyalty to the plaintiff while he was in the plaintiff's employ.[5] Count III alleged that the defendants interfered with the plaintiff's business and advantageous relationships. Lastly, count IV alleged that the defendants violated G. L. c. 93A based on the defendants' misappropriation of the plaintiff's trade secrets.
Procedural background. We recount the lengthy procedural history of the case. The plaintiff filed suit on March 17, 2014, and immediately moved for a preliminary injunction against the defendants, which was denied for failure to demonstrate either a substantial likelihood of success on the merits or a substantial risk of immediate and irreparable harm.[6] The parties thereafter exchanged discovery requests, which resulted in numerous objections from both sides. The defendants specifically requested that the plaintiff provide "a bona fide definition or description of its alleged trade secrets and/or claimed proprietary information."[7] Upon the plaintiff providing the defendants with notice of a deposition date and that it planned to depose the defendants about their client relations and testing methods, the defendants filed an emergency motion for a protective order. This motion was denied "without prejudice to re-file after compliance with Superior Court Rule 9C."
After a Rule 9C conference on February 3, 2015, the defendants filed another motion for a protective order, seeking "to protect themselves from the unwarranted fishing expedition by [the] [p]laintiff into their new business." On March 12, 2015, a judge allowed the motion in part, ordering that "[t]he plaintiff shall not conduct further discovery" until it serves the defendants with a "written, specific designation of those trade secrets claimed to form the basis of this lawsuit."[8] In June, 2015, the defendants filed a "motion to dismiss the complaint for [the plaintiff's] failure to follow the court's orders to define the alleged trade secrets." On August 27, 2015, in an effort to "show restraint to the extent it will allow a last chance for full and unequivocal compliance with the [March 12, 2015,] order to divulge the specific trade secrets at issue," the motion judge denied the defendants' motion to dismiss without prejudice. The motion judge gave the plaintiff fourteen days to serve the defendants "with the specific designation of its claimed trade secrets, including its client lists and proprietary testing and methodology, as previously ordered on March 12, 2015."
On September 10, 2015, the plaintiff served the defendants with impounded documents titled "Plaintiff's Specific Designation of its Trade Secrets." Such documentation comprised two exhibits: Exhibit A, titled "Client of Wright Group"; and Exhibit B, titled "Outline of Examination Protocols."[9] The defendants filed a renewed motion to dismiss the complaint, arguing that these impounded documents failed to satisfy the court's order that the plaintiff specifically define any trade secrets that formed the basis of the lawsuit. After an in-camera review of the impounded documents, a motion judge granted the defendants' motion to dismiss as to counts I and IV, misappropriation of trade secrets and violation of c. 93A, respectively. The motion judge ruled that
"the materials that [the] plaintiff claimed were trade secrets misappropriated by the defendant Kannally, were not at all trade secrets. Both exhibits A and B were compilations of information prepared for filing in court and were not actual business documents of the plaintiff. Thus, there could be no allegation that defendant Kannally misappropriated these documents. Additionally these documents were devoid of content that could, even using the term broadly, be deemed to be trade secrets."[10]
The parties resumed discovery in January, 2016, on counts II and III, Kannally's alleged breach of his duty of loyalty and the defendants' tortious interference with the plaintiff's business and advantageous relationships, respectively.[11] On May 27, 2016, the plaintiff served a motion to amend its complaint, seeking to add claims for interference with contractual relationships and violation of G. L. c. 93A. Following a hearing on July 28, 2016, this motion was denied.
In October, 2016, the defendants moved for summary judgment on both count II and count III, arguing that there is no dispute to any material fact. This motion was granted and judgment entered on those counts. The plaintiff appeals, challenging the dismissal of counts I and IV; the summary judgment against it on count III; and the denial of its motion to amend its complaint.
Discussion. 1. Motion to dismiss counts I and IV. We review the allowance of a motion to dismiss de novo. The plaintiff maintains that the judge erred in dismissing count I, which alleged that the defendants misappropriated the plaintiff's trade secrets. The plaintiff argues that it produced a specific designation of information, i.e., its client list and testing protocol, that satisfies the trade secrets requirements. We disagree.
General Laws c. 93, § 42, inserted by St. 1967, c. 817, § 3, provides in pertinent part that it is unlawful to "embezzle[ ], steal[ ] or unlawfully take[ ], carr[y] away, conceal[ ], or cop[y], or by fraud or by deception obtain[ ], from any person or corporation, with intent to convert to [one's] own use, any trade secret, regardless of value." A trade secret is defined as
"any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.... A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article.... The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret" (emphasis supplied).
J. T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 726, 736 (1970), quoting from Restatement: Torts, § 757, comment b.
Here, the information contained in the plaintiff's impounded documents, i.e., a list of companies and a summary of the plaintiff's fire testing procedures, do not amount to trade secrets. The plaintiff's list of companies in Exhibit A consists of merely the names of insurance companies, manufacturers, and law firms, all of which is public information and not confidential. Exhibit B is devoid of any information that goes beyond general knowledge in the fire testing industry. Such information "cannot be appropriated by [the defendants] as [the plaintiff's] trade secret." Ibid. Furthermore, we agree with the motion judge that these impounded documents were just "compilations of information prepared for filing in court and were not actual business documents of the plaintiff" that the defendants could potentially have misappropriated.[12]
2. Motion for summary judgment on count III. The plaintiff next argues that the judge erred in granting the defendants' motion for summary judgment on count III, tortious interference with business and advantageous relationships. The plaintiff maintains that (1) material facts had not yet been disclosed, i.e., the defendants' financial disclosures on the amount of revenue earned from common clients with the plaintiff; and (2) notwithstanding the defendants' financial disclosures, the plaintiff had "offered proof that substantiated a successful claim for interference."
There are four elements that must be met in order to satisfy a claim for interference with business relations: "(1) [the plaintiff] had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." Cavicchi v. Koski, 67 Mass. App. Ct. 654, 657 (2006). Here, the plaintiff failed to provide sufficient evidence, even in the light most favorable to it, that Kannally contacted its clients with an improper motive or through improper means, a required element of a claim for tortious interference with business relationships. See ibid.; United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 n.8 (1990). We agree with the judge that while Kannally soliciting clients may be considered intentional, it is evident that his motive was to promote his own business, not to hurt the plaintiff. See Hunneman Real Estate Corp. v. The Norwood Realty, Inc., 54 Mass. App. Ct. 416, 429 (2002), quoting from Restatement (Second) of Torts § 768(1)(d), and comment g, at 43 (1979) ("If [the interfering party's] conduct is directed, at least in part, to [advancing his competitive interest], the fact that he is also motivated by other impulses, as, for example, hatred or a desire for revenge is not alone sufficient to make his interference improper").[13]
3. Motion to amend complaint. Finally, the plaintiff argues that the judge abused his discretion in denying the plaintiff's motion to amend its complaint, because, according to the plaintiff, its additional claim for interference with contract relations was not redundant but rather essential to its presentation. The determination whether to grant a motion to amend is within the sound discretion of the motion judge, and "leave should be granted unless there appears some good reason for denying the motion." Vakil v. Vakil, 450 Mass. 411, 417 (2008), quoting from Goulet v. Whitin Mach. Works, Inc., 399 Mass. 547, 549 (1987). Here, the motion judge concluded, and we agree, that the plaintiff's claim for interference with contract relations is functionally similar to its claim that the defendants interfered with the plaintiff's advantageous relationships.[14] The plaintiff maintains that although the substantive elements of the two claims are substantially similar, they are different. Even if the judge abused his discretion in denying the plaintiff's motion to amend its complaint, which we do not conclude, the plaintiff nevertheless failed to present a dispute that any interference on the defendants' part was accomplished through improper means or motive, a required element for both claims. We, therefore, affirm.
Order of dismissal entered November 16, 2015, affirmed.
Judgment entered February 27, 2017, affirmed.

Kannally is the president and sole director of the codefendant, Northeastern Forensics, Inc.

We treat the order entered on November 16, 2015, dismissing counts I and IV of the complaint, as a final judgment on those claims.

The plaintiff does not address the dismissal of count II on appeal.

The plaintiff sought to preclude the defendants from (1) continuing to contact or do business with any current or past clients of the plaintiff, (2) utilizing any of the plaintiff's "proprietary methods of testing products for causes of fire or other product liability incidents," and (3) "taking, receiving, concealing, assigning, transferring, leasing, pledging, copying or otherwise using any trade secrets of [the plaintiff]."

The plaintiff "resisted producing this information," claiming that such "information and data are confidential and would, if divulged, provide Kannally with possibly more information than he has misappropriated to date."

The judge further ruled that "[t]his designation shall be subject to a confidentiality agreement which the parties shall jointly draft and apply to all future discovery in this matter." The parties were unable to reach a mutually agreeable confidentiality agreement, so the court issued its own confidentiality order on May 12, 2015. The plaintiff filed a motion for reconsideration of the confidentiality order. This motion was denied on June 12, 2015.

Exhibit A consisted of a fifty-two page list of the plaintiff's clientele. Exhibit B consisted of a three-page outline of the plaintiff's "specific protocols" and "specific testing procedures" for examining the origin and cause of fires.

The plaintiff sought interlocutory review of this decision with a single justice of this court. The interlocutory appeal was denied.

Over the course of discovery, the defendants filed a motion for a protective order against the plaintiff's overly broad discovery request, which was allowed; the plaintiff filed an emergency motion to compel the defendants to produce certain financial information, which was denied; and the plaintiff filed a renewed motion to compel discovery, which was also denied.

Because we conclude that the judge did not err in dismissing the plaintiff's misappropriation claim, it follows that dismissal of the plaintiff's G. L. c. 93A claim based on the defendants' alleged misappropriation was also not error.

The plaintiff's argument that the defendants' financial disclosures would have provided material facts is unpersuasive. While such information might have assisted in assessing damages, it would not have rescued the plaintiff from failing to satisfy the requirement that the defendants' conduct was accomplished through "improper motive or means." Cavicchi, 67 Mass. App. Ct. at 657.

"To make out a claim of tortious interference with contractual relations, a plaintiff must demonstrate that '(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.' " Cavicchi, 67 Mass. App. Ct. at 657, quoting from Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994).