SUPERIOR COURT 
 
 BAYSTATE FINANCIAL SERVICES, LLC & another[1] vs. GREGORY PINTO & others[2]

 
 Docket:
 2084CV02507
 
 
 Dates:
 February 18, 2021
 
 
 Present:
 Robert B. Gordon, Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS’ MOTION TO DISMISS OR, ALTERNATIVELY, TO COMPEL ARBITRATION
 
 

             Baystate Financial Services, LLC (“Baystate”) and Baystate Wealth Management, LLC (“BWM”) (collectively, the “Plaintiffs”) filed this action seeking equitable relief and monetary damages on account of the Defendants’ alleged breaches of certain contractual and fiduciary obligations. Presented for decision is the Defendants’ Motion to Dismiss the First Amended Complaint (the “Complaint”) pursuant to Mass. R. Civ. P. 12(b)(6), or, in the Alternative, to Compel Arbitration. For the reasons which follow, the Defendants’ motion shall be ALLOWED
in part and DENIED in part.
BACKGROUND
            The following facts, assumed to be true, are taken from the Plaintiffs’ Complaint.[3] Some facts are reserved for later discussion of the Plaintiffs’ legal claims.
            I.          The Defendants, Baystate, and MassMutual
 
---------------------------
 
[1]Baystate Wealth Management, LLC
 
[2]Patrick Hinton, Daniel Wagner, Jack Heintzelman
 
[3]Along with the Complaint, the Court considers documents upon which the allegations of the Complaint rely. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004). In particular, the Court relies on a representative copy of the Defendants’ contracts with MassMutual that was appended to the Complaint, and a copy of a resignation letter that was attached to the Plaintiffs’ Opposition to the Defendants’ Motion to Dismiss.
 
                                                            -1-
 
            Baystate is a general agency[4] of MassMutual, through which insurance and other financial products and services are sold to the public. Prior to July 24, 2020, the Defendants worked full-time as financial advisors from Baystate’s office in Wellesley.[5] While they were working at Baystate, the Defendants executed contracts with MassMutual, pursuant to which MassMutual authorized each Defendant to solicit and service business on behalf of MassMutual as a Financial Service Representative or Broker (the “MassMutual Contracts”).[6] The Defendants’ MassMutual Contracts contained virtually identical restrictive covenants, including a paragraph entitled “Non-Solicit Obligations” (the “Non-Solicitation Provision”), which states, in relevant part, that:
“Upon termination of this Contract and unless Advisor[7] executes another contract with [MassMutual][8] and/or another general agent, general manager or managing partner of [MassMutual] authorizing Advisor to solicit business for [MassMutual], Advisor will cease soliciting Products for, and holding himself or herself out as, an agent or representative of [MassMutual]. In addition, to the
 
---------------------------
 
[4]A general agent is “an agent authorized to conduct a series of transactions involving a continuity of service.” See Restatement (Second) of Agency, § 3. Although the term “general agent” has “no fixed meaning in the business world,” see id. § 3, comment e, in the insurance and financial services industries, it typically refers to a person or entity who employs agents to sell products and services offered by the principal. See id. (general agents of insurance companies ordinarily employ agents to “carry out the business” of the principal); see, e.g., Bay State Savings Bank v. Baystate Fin. Servs., LLC, 338 F. Supp. 2d, 181, 185 (D. Mass. 2004) (discussing Baystate’s history selling financial products and services as a general agency of New England Life); Life Plans Unlimited v. Connecticut Retail Merchant Assoc., 1998 Conn. Super. LEXIS 635 at *2 (Conn. Sup. Ct. 1998) (explaining that plaintiff, as an insurance general agent, wholesales insurance to independent agents rather than individual policy- holders, and is authorized to act as an agent for the principal insurance provider in order to service its independent agents).
 
[5]Although the MassMutual Contracts, defined and discussed infra, indicate that the Defendants were employed as independent contractors of MassMutual, the Complaint does not unequivocally state whether the Defendants were also employed by Baystate. The Complaint alleges only that the Defendants worked “at” and “from” Baystate’s Wellesley office, and used Baystate’s email system, phone number and facilities to conduct business with clients.
 
[6]The Complaint is unclear as to whether the Defendants executed the MassMutual Contracts before or after they started working at Baystate.
 
[7]The MassMutual Contracts define “Advisor” as the person who entered into the Contract with MassMutual. The Court hereinafter uses the term “MassMutual advisor” to refer to individuals who sell MassMutual’s products.
 
[8]The MassMutual Contracts expressly define MassMutual as “the Company.” For clarity, the Court has replaced references to “the Company” with “MassMutual.”
 
                                                            -2-
 
extent permitted by law, Advisor agrees not to directly or indirectly, during the term of this Contract and for a period of two years following such termination, solicit, induce or do anything to cause, persuade, encourage or assist, either directly or indirectly, any:
            a.         person employed by or under a contract with a general agent of [MassMutual], any person employed or under a contract with [MassMutual] or any person employed by or under contract with both [MassMutual] and the general agent, to terminate such contract or employment and/or to affiliate with a competitor of [MassMutual] . . .
            b.         policyholder, insured, or contract holder of [MassMutual] whom Advisor serviced or otherwise had contact with to surrender (either partially or fully), make withdrawals from, substantially modify, cancel, lapse, or fail to renew such policies, or to obtain policy loans on such policies for the purpose of paying premiums on policies not issued by [MassMutual] . . . .
                        . . .
                        Advisor acknowledges that information related to policyholders, insured, and contract holders of [MassMutual] (i) is not readily ascertainable through public sources, (ii) is costly to maintain, protect and safeguard, (iii) could be discovered only through the expenditure of great effort and resources, and (iv) has independent economic value to [MassMutual] and, consequently, constitutes a trade secret of [MassMutual].”
            Immediately following the Non-Solicitation Provision, the MassMutual Contracts set forth a provision entitled “Remedies” (the “Remedies Provision”), which states that if an Advisor breaches any of the covenants or obligations of the Non-Solicitation Provision:
“Advisor agrees that [MassMutual] will be entitled to injunctive relief. Advisor recognizes that [MassMutual] will suffer immediate and irreparable harm and that monetary damages alone will not be adequate to compensate [MassMutual] or to protect and preserve the status quo. Therefore, Advisor agrees that injunctive relief would be appropriate remedy [sic] against such breach. Advisor agrees and understands that this remedy is non-exclusive, and monetary damages may be reasonable. Advisor agrees that [MassMutual] will be entitled to the equitable remedy of an injunction as set forth above, in addition to potential monetary remedies under this clause or under applicable law or regulation.”
            Sometime in early to mid-2020, the Defendants began to induce other individuals who worked at Baystate and were under contract with MassMutual to terminate their MassMutual
 
                                                            -3-
 
Contracts and affiliate with a competitor, Commonwealth Financial Network (“Commonwealth”). The Defendants purportedly concealed these efforts so that they could all resign from Baystate at the same time, and thereby move clients and business from Baystate to Commonwealth.
            On July 24, 2020, the Defendants, together with another person who worked at Baystate and was under contract with MassMutual, submitted a joint letter of resignation to Baystate, which letter indicated that they were leaving Baystate to join Commonwealth. In October, 2020, the Defendants persuaded a second person who worked at Baystate and was under contract with MassMutual to leave Baystate and join Commonwealth.
            II.        Pinto and BWM
            In or around 2012, Defendant Gregory Pinto (“Pinto”) became a member and owner of BWM. The Complaint alleges that, in exchange for his ownership interest, Pinto “assumed the highest fiduciary duties” to BWM, and agreed to transfer his book of business to BWM, act as an in-house wholesaler of BWM to other Baystate advisors, and promote BWM to Baystate advisors and others outside the firm.
            In or around 2014, Pinto decided that he would no longer act as BWM’s internal wholesaler, promote BWM to advisors at Baystate, or transfer his book of business to BWM. From 2013 until his resignation from BWM on December 31, 2019, Pinto managed assets for outside clients in a manner contrary to how assets were managed by BWM, and disparaged BWM to other Baystate advisors and people outside of Baystate. All the while, Pinto continued to demand and accept payments as a BWM member and profit participant.
 
                                                            -4-
 
DISCUSSION
            I.          Motion to Dismiss Standard
            The Defendants have moved to dismiss the Plaintiffs’ claims pursuant to Mass. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. . . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). “The allegations must be more than ‘mere labels and conclusions,’ and must ‘raise a right to relief above the speculative level.’” Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 17 (2018) (quoting Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 165 (2014)). The Court’s review is limited to the factual allegations of the complaint and facts contained within any attached exhibits, see Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007), as well as any matters of public record and documents relied upon in the complaint. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The Court must “accept as true the factual allegations in the complaint and the attached exhibits, [and] draw all reasonable inferences in the plaintiff’s favor. . . .” Buffalo-Water 1, LLC, 481 Mass. at 17.
            II.        Baystate’s Claims
            Baystate has asserted claims against the Defendants for breach of contract and tortious interference with contractual and advantageous relations.9 Both claims are premised on the Defendants’ alleged solicitation of the individuals who left Baystate to affiliate with Commonwealth. The Court will address Baystate’s claims in turn.
 
---------------------------
 
[9]The Complaint also sets out by way of claim a specific prayer for injunctive relief against all Defendants. Dismissal of this claim is appropriate, however, because injunctive relief is a remedy and not a substantive cause of action. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 348, 353 n.3 (1st Cir. 2013) (“[I]njunctive relief is not a stand-alone cause of action in Massachusetts.”).
 
                                                            -5-
 
            A.        Breach of Contract
            Baystate brings a breach of contract claim against the Defendants, premised on the allegation that the Defendants’ conduct violated the Non-Solicitation Provision. Inasmuch as Baystate was not a party to the MassMutual Contracts, however, its standing to maintain a breach of contract claim turns on whether Baystate was an intended (rather than incidental) beneficiary of the Non-Solicitation Provision. See Harvard Law School Coalition for Civil Rights v. President and Fellows of Harvard College, 413 Mass. 66, 71 (1992); see also James Family Charitable Found. v. State Street Bank and Trust Co., 80 Mass. App. Ct. 720, 725 (2011) (“One need not be a beneficiary of every provision of the contract in order to be an intended beneficiary with enforceable rights; it is enough to be the intended beneficiary of the promise one is seeking to enforce.”). To establish it was an intended third-party beneficiary of the Non- Solicitation Provision, Baystate must point to “clear and definite” evidence that the contracting parties intended Baystate both to benefit from the provision and have the right to enforce it. See Landry v. Transworld Systems Inc., 485 Mass. 334, 342 (2020); Lakew v. Massachusetts Bay Transp. Auth., 65 Mass. App. Ct. 794, 799 n.10 (2006). Baystate argues that the Non-Solicitation Provision’s express references to general agents, together with the overall circumstances surrounding the Defendants’ relationship with Baystate, provide the requisite clear and definite evidence of intent to confer a benefit upon Baystate and grant it a right of enforcement. The Court does not agree.
            After reviewing the unambiguous language of the MassMutual Contracts, and the Non- Solicitation and Remedies Provisions in particular, the Court concludes that the only entity the contracting parties clearly and definitely intended to benefit from and enforce the Non- Solicitation Provision was MassMutual. This is a conclusion the Court reaches as a matter of
 
                                                            -6-
 
law. See Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (“Whether a contract is ambiguous is . . . a question of law.”); Gomes v. Metropolitan Property & Cas. Ins. Co., 45 Mass. App. Ct. 27, 31-32 (1998) (proper interpretation of unambiguous written contract is question of law that may be resolved on motion to dismiss for failure to state a claim).
            The contracting parties’ indifference to the interests of general agents is evident in the first sentence of the Non-Solicitation Provision, which provides that the restrictive covenants therein are applicable upon termination “unless Advisor executes another contract with [MassMutual] and/or another general agent . . . of [MassMutual] authorizing Advisor to solicit business for [MassMutual]. . . .” (Emphasis added). In other words, MassMutual advisors who leave a general agent (like Baystate) to work at a competing general agent are not bound by the Non-Solicitation Provision (and may solicit advisors working at the former agent) so long as the competing agent is affiliated with MassMutual. To the extent the Non-Solicitation Provision may prohibit some advisors who leave Baystate from poaching Baystate advisors, therefore, such benefit appears incidental to the provision’s primary objective to protect the business interests of MassMutual. See Cumis Ins. Soc’y, Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 467 (2009) (“That the plaintiffs derive a benefit from a contract between others does not make them intended third-party beneficiaries and does not give them the right to enforce that agreement.”).
            The Remedies Provision likewise fails to suggest that the contracting parties intended to confer a benefit on general agents, in that it only states that MassMutual will be harmed if the Non-Solicitation Provision is breached. Thus, in the event of a breach, the Remedies Provision only authorizes MassMutual to obtain equitable remedies and monetary damages, and is devoid of any reference to the rights of general agents at all. Nothing in the MassMutual Contracts, therefore, indicates that the parties thereto intended to grant Baystate a right to enforce the Non-
 
                                                            -7-
 
Solicitation Provision, much less suggests that Baystate would be entitled to equitable relief or money damages in the event of breach. See Landry, 485 Mass. at 342 (for evidence of intent to include plaintiffs as third-party beneficiaries “to be considered ‘clear and definite,’ there must, at a minimum, be no ambiguity” as to who can enforce the provision in question); Beatty v. NP Corp., 31 Mass. App. Ct. 606, 612 (1991) (“contracts rest on objectively expressed manifestations of intent,” and cannot be altered by the “subjective and unexpressed expectations” of one party or side).
            Baystate nonetheless argues that the fact that the Defendants were working out of Baystate’s offices when they executed the MassMutual Contracts, combined with the Non- Solicitation Provision’s language barring the solicitation of “any person employed by or under a contract with a general agent . . . or any person employed by or under contract with both [MassMutual] and the general agent,” evidences MassMutual’s intent “to prevent advisors like the defendants from poaching other Baystate Financial advisors from Baystate Financial.” (Plaintiffs’ Opposition, at p. 8.) There is no indication, however, that MassMutual sought to prevent advisors like the Defendants from poaching Baystate advisors to benefit Baystate instead of, or even in addition to, MassMutual.[10] See Anderson v. Fox Hill Village Homeowners Corp.,
 
---------------------------
 
[10]It bears emphasis in this regard that the Non-Solicitation Provision indicates that MassMutual advisors have access to confidential and proprietary information that constitute trade secrets with “independent economic value” to MassMutual. In subsection (b), the Non- Solicitation Provision additionally suggests that, through its advisors, MassMutual cultivates ongoing relationships with customers and thereby nurtures business goodwill. It follows that the loss of any MassMutual advisor to a competitor may put the advisor in a position to misuse MassMutual’s trade secrets and appropriate its goodwill for the competitor’s benefit. See All Stainless, Inc. v. Colby, 364 Mass. 773, 779-80 (1974 (former employee’s knowledge of confidential information or close association with customers may put employee in position to harm former employer’s goodwill). The Non-Solicitation Provision seeks to mitigate this risk by prohibiting advisors from inducing other MassMutual advisors to affiliate with a MassMutual competitor. To ensure that all MassMutual advisors fall within the scope of this prohibition, it not only bars the solicitation of advisors employed by MassMutual directly, but also the
 
                                                            -8-
 
424 Mass. 365, 367 (1997) (plaintiff could not recover as third-party beneficiary where there was “no indication, express or implied, that any obligations were imposed for [her] benefit”).
            Baystate additionally argues that its intended right to benefit from and enforce the Non- Solicitation Provision is evidenced by certain aspects of its relationship with the Defendants.
Specifically, Baystate contends that it would not have provided office space, technology, and financial services to the Defendants if it did not have a right to enforce the Non-Solicitation provision. Baystate likewise cites the Defendants’ submission of a resignation letter to Baystate as evidence of the Defendants’ own understanding that they were employed by Baystate and thus contractually bound to it under the MassMutual Contracts. These arguments fail to persuade.
            The provision of office space, technology, and services by Baystate to the Defendants reflects nothing more than Baystate’s own expectation it would benefit from the Defendants working at its facilities as advisors for MassMutual. It says nothing whatsoever about the intent of the parties to the MassMutual Contracts. The Defendants’ decision to notify Baystate that they would no longer be working out of its offices similarly fails to shed light on the intent of these contracting parties, and does not, as Baystate insists, permit the reasonable inference that the Defendants themselves recognized they owed contractual obligations to Baystate. Indeed, the Defendants’ letter to Baystate announcing their relocation to Commonwealth is the last thing one might expect of advisors who believed they were embarking on a violation of the Non- Solicitation Provision that Baystate might seek to enjoin. There is nothing in the Complaint to suggest that the resignation letter represents anything other than the Defendants’ choice to leave Baystate — which had provided them with office space, technology, and services — in a manner that was professional and courteous. All things considered, it is unsurprising the Defendants
 
---------------------------
 
solicitation of advisors who are employed by MassMutual general agents. So drafted, the purpose of the Non-Solicitation Provision is to safeguard the business interests of MassMutual.
 
                                                            -9-
 
opted to inform Baystate of their departure as they did, rather than simply decamp from their offices and abandon long-standing colleagues without notice or explanation.
            For the foregoing reasons, the Court finds that neither the language of the MassMutual Contracts nor the allegations of the Complaint permit a reasonable inference that MassMutual clearly and definitely intended Baystate to benefit from and enforce the MassMutual Contracts as a third-party beneficiary. See Cumis Ins. Soc’y, Inc., 455 Mass. at 467 (plaintiffs could not recover as intended third-party beneficiaries where “[n]either the complaint on its face nor the attached agreements offer[ed] any basis to support an intention on the part of the defendants that the contract be performed for the benefit of the plaintiffs”). Accordingly, the Plaintiffs’ breach of contract claim shall be dismissed.
            B.        Tortious Interference with Advantageous and Contractual Relations
            To state a claim for tortious interference with advantageous and contractual relations, a plaintiff must prove that: (1) it had a contract, expected contract or other advantageous business relationship with a third party; (2) the defendant knew of the contract or business relationship; (3) the defendant induced the third party to breach or otherwise impair the contract or advantageous relationship; (4) the defendant acted out of improper motive or employed improper means; and (5) the defendant’s conduct caused the plaintiff pecuniary harm. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 394-95 (2005); Shafir v. Steele, 431 Mass. 365, 369 (2000); Shea v. Emmanuel Coll., 425 Mass. 761, 764 (1997); Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994). Accord Bartle v. Berry, 80 Mass. App. Ct. 372, 380 (2011).
            In the case at bar, Baystate has concededly satisfied the first three elements of a tortious interference claim. The Complaint thus alleges that Baystate had advantageous relationships
 
                                                            -10-
 
with the advisors working out of its offices,[11] that the Defendants were fully aware of those relationships, and that the Defendants induced at least two such advisors to leave Baystate and affiliate with a competitor. Nevertheless, Baystate has failed to state a viable claim for tortious interference because, as will be explained below, it has not set forth sufficient allegations to establish that the Defendants acted out of improper motive or employed improper means. See
Cavicchi v. Koski, 67 Mass. App. Ct. 654, 657 (2006).
            To establish that a defendant acted out of improper motive or employed improper means, a plaintiff must show that the interference resulting in injury was “wrongful by some measure beyond the fact of the interference itself.” United Truck Leasing Corp. v. Geltman, 406 Mass.
811, 816 (1990). More particularly, the plaintiff must show that the defendant perpetrated the interference by violating a statute or committing a common law tort. See Geltman, 406 Mass. at 817; Kurker v. Hill, 44 Mass. App. Ct. 184, 191-92 (1998); National Econ. Research Assocs. v. Evans, 24 Mass. L. Rep. 436, 2008 Mass. Super. LEXIS 294 at *29 (Mass. Sup. Ct. 2008) (“The improper means required to prove tortious interference must consist of a violation of a statute or the commission of a common law tort (or aiding and abetting its commission), such as threats, misrepresentations, or defamation.”) (Gants, J.). Interference may also be wrongful if it interferes with a right or expectation of which the plaintiff was legally assured. See, e.g., Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 681 (2011) (defendants’ interference with plaintiff’s business relationships by copying his advertising designs was only improper if plaintiff had a legal right or entitlement to the designs); Illinois Tool Works Inc. v. Bales, 2020 U.S. Dist. LEXIS 111107 at *21 (D. Mass. 2020) (inducing competitor’s employee to break restrictive
 
---------------------------
 
[11]Although the Court has found that the MassMutual Contracts did not create a contractual relationship between Baystate and its advisors, the allegations in the Complaint do support a reasonable inference that Baystate profited from the sales of its advisors and, therefore, enjoyed an advantageous relationship with them. See Owen v. Williams, 322 Mass. 356, 361-62 (1948) (advantageous relationship is “an existing or even a probable future business relationship from which there is a reasonable expectancy of financial benefit”).
 
                                                            -11-
 
covenant in order to solicit competitor’s clients “can give rise to an intentional interference claim”); Protege Software Servs., Inc. v. Colameta, 2012 Mass. Super. LEXIS 190 at *38, 2012 WL 2030268 (Mass. Super. July 16, 2012) (Kirpalani, J.) (same).
            In the case at bar, Baystate does not suggest that the Defendants acted out of improper motive, but instead maintains that they employed improper means insofar as the Defendants solicited individuals to leave Baystate in violation of their obligations under the Non-Solicitation Provision. As set forth ante, however, Baystate has failed to establish that the Defendants’ conduct breached any obligations that Baystate has the right to enforce. Insofar as the Defendants’ conduct may have breached promises enforceable by MassMutual, which MassMutual itself has not alleged in any court filing, Baystate has cited no case law holding that a defendant’s breach of an agreement to a third party can be considered “wrongful” for purposes of a tortious inference claim.
            Further to the above, a breach of contract is not a statutory violation, and does not constitute a tort “in the absence of a duty to act apart from the promise made.” Anderson, 424 Mass. at 368; see also Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 144 (1937) (negligence in performing a contractual duty that causes damage is a tort). Inasmuch as Baystate has failed to establish that it was an intended third-party beneficiary of the Non-Solicitation Provision, it has likewise failed to demonstrate that the Defendants’ conduct infringed upon a right or expectation of which Baystate was legally assured. See Restatement (Second) of Torts, § 767 (whether intentional interference is improper depends upon, inter alia, “the interests of the other with which the actor’s conduct interferes,” the interest in “protecting the freedom of action of the actor and the contractual interests of the other,” and “the relations between the parties”).
            Accordingly, the Complaint has failed to state a viable claim for tortious interference
 
                                                            -12-
 
with advantageous or contractual relations. Baystate’s tortious interference claim, therefore, shall be dismissed
            III.       BWM’s Claim
            BWM asserts a single claim against Pinto for breach of fiduciary duty. A limited liability company such as BWM is similar to a close corporation, in that its members owe one another the “utmost good faith and loyalty” and “may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty. . . .” Donahue v. Rodd Electrotype Co., 367 Mass. 578, 593
(1975). To the extent BWM alleges Pinto deliberatey managed assets for outside clients in a manner contrary to the manner assets were managed by BWM, and disparaged BWM to other Baystate advisors and people outside of Baystate, BWM has set forth sufficient allegations to state a claim against Pinto for breach of fiduciary duty.[12]
            However, BWM’s allegations that Pinto variously failed to transfer his book of business to BWM, act as an in-house wholesaler of BWM to other Baystate advisors, and promote BWM to Baystate advisors and others outside of the firm stand on different footing. The Complaint alleges that Pinto undertook the foregoing obligations in exchange for his membership interest in BWM. Damages for Pinto’s alleged failure to honor these promises are only recoverable under contract law. See Anderson, 424 Mass. at 368 (quoting W. Prosser & W. Keeton, Torts § 92, at 656 (5th ed. 1984)) (“[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed.”). For these reasons, BWM’s claim for breach of
 
---------------------------
 
[12]During oral argument on February 8, 2010, Plaintiffs’ counsel expressly denied that BWM’s claim for breach of fiduciary duty rested on Pinto’s fiduciary obligations under BWM’s LLC Agreement. Based on this representation, the Court has not considered BWM’s LLC Agreement for purposes of the present Rule 12 decision, because it is not a document upon which the allegations of the Complaint rely.
 
                                                            -13-
 
fiduciary duty must be dismissed insofar as it is predicated on Pinto’s alleged breach of promises to BWM.[13]
CONCLUSION AND ORDER
            For the foregoing reasons, the Defendants’ Motion to Dismiss is ALLOWED as to the
Plaintiffs’ claims for injunctive relief (Count I), breach of contract (Count II), and tortious interference with contractual and advantageous relations (Count III). The Defendants’ motion is also ALLOWED as to the Plaintiffs’ claim for breach of fiduciary duty (Count IV) to the extent that claim is premised on alleged contract violations, but is otherwise DENIED.
SO ORDERED.
@/s/Robert B. Gordon, Justice of the Superior Court
@February 18, 2021
 
---------------------------
 
[13]At trial, the Plaintiffs would be entitled to press any legal theory fairly raised by the allegations in the Complaint, even if that theory is not expressly pleaded. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1998). That said, the Plaintiffs may wish to seek leave to amend the Complaint in order to add an explicit claim for breach of contract against Pinto.
 
                                                            -14-
 
 
xxz