Melissa A. D'ANDREA

v.

George CALCAGNI.

No. 97–354–Appeal.

Supreme Court of Rhode Island.

Jan. 15, 1999.

Michael A. Gamboli, Providence, for plaintiff.

Edward J. Mulligan, Lincoln, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This is an action for tortious interference with a contractual relationship brought by the plaintiff, Melissa A. D'Andrea (D'Andrea), against the defendant, George Calcagni (Calcagni), a minority shareholder with no official responsibilities. On November 5, 1998, this case came before the Supreme Court pursuant to an order directing Calcagni to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the parties' arguments and examining their memoranda, we conclude that cause has not been demonstrated. Therefore, we shall decide the merits of this appeal at this time.

In approximately January 1991, D'Andrea began working for Crystal Management Cor-

poration (Crystal), which operates a chain of fast-food restaurants in Rhode Island known as Wendy's Old Fashioned Hamburgers (Wendy's). Crystal was owned by Calcagni and two other one-third shareholders, Ward Parker (Parker) and John Barba (Barba). D'Andrea testified that in July 1991, she received a pay raise, followed by another pay raise and a promotion in March 1992, followed by yet another pay raise in July 1992. In addition to the promotion and the three pay raises, D'Andrea testified that she had received performance evaluations, which "were all generally good."

In April 1993, D'Andrea began a maternity leave and testified that she had expected to return to work approximately six weeks after the baby was born. On or about July 26, 1993, approximately two weeks after her return to work, D'Andrea met with Parker, the vice-president of Crystal who was in charge of operations, and Barba, the president and treasurer of Crystal. At this meeting, D'Andrea was informed that she was being terminated due to "bad blood" that existed between her father's concrete company, and that of another company, which was owned by Calcagni. Although Calcagni did own the remaining one-third share of Crystal stock, both Parker and Barba testified that Calcagni was not involved in the management of the restaurants. Furthermore, Parker testified that it was his responsibility to hire and fire employees, and that he was not in favor of firing D'Andrea.

During trial, Barba stated that he worked for Calcagni's construction company as the comptroller and was very loyal to his employer. Moreover, Barba testified that he had several conversations with Calcagni concerning D'Andrea's employment with Crystal, including a discussion about a dispute involving D'Andrea's father's concrete company and Calcagni's construction company. According to Barba, this dispute was going to have an adverse effect on Calcagni's company, and Calcagni pondered what kind of allegiance D'Andrea's father had toward Calcagni. Barba testified that these discussions resulted in the decision to fire D'Andrea. For his part, Calcagni denied any involvement in the decision to terminate D'Andrea. In fact,

Calcagni maintained that he had very little connection to the day-to-day management of the Wendy's restaurants.

In September 1994, D'Andrea filed a two-count complaint in which she alleged that her termination was due to the actions of Calcagni, who was neither an officer nor a director of Crystal. Count one alleged that Calcagni intentionally interfered with D'Andrea's employment contract, and count two maintained that Calcagni intentionally caused D'Andrea emotional distress. Following a trial in the Superior Court, a jury returned a verdict in favor of D'Andrea with respect to count one and awarded compensatory damages in the amount of $40,000. D'Andrea's request for punitive damages was denied and no damages were awarded on count two. Judgment, including interest, entered for D'Andrea in the amount of $56,583.01. During trial, Calcagni moved for judgment as a matter of law, and after trial filed motions seeking a new trial or remittitur, all of which were denied. On appeal, Calcagni raises numerous issues including the trial justice's charge to the jury. In addition, Calcagni claims that D'Andrea was entitled only to consequential damages, and that his motions for judgment as a matter of law, new trial, and remittitur should have been granted.

At the outset, we note that for the purpose of maintaining a cause of action for tortious interference with contractual relations, Calcagni does not contest that he was a minority shareholder of Crystal, and was neither an officer nor a director of that corporation. Having established this fact we proceed to what we perceive to be the crux of Calcagni's appeal, whether the trial justice erred when he instructed the jury that it "may consider as damages out-of-pocket losses and other economic harm [such] as injuries to reputation, personal humiliation, mental anguish and suffering." Defense counsel objected to the trial justice's instruction at the time it was given, and again protested during post-trial arguments for a new trial. Defense counsel stated, "[the] damages are contract damages. I don't see this State as going a step further and saying we're giving pain and suffering and all these other things for tortious interference with contract." We dis-

agree and are fully prepared to take those steps.

■ This Court previously has recognized that interference with a contractual relationship is an action sounding in tort. *See Mesolella v. City of Providence,* 508 A.2d 661, 669 (R.I.1986). As such, according to Restatement (Second) *Torts,* § 774A at 54–55 (1979), damages include: "(a) the pecuniary loss of the benefits of the contract * * * ; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably expected to result from the interference." *See Mesolella,* 508 A.2d at 671 (adopting Restatement (Second) *Torts* § 774A). *See also Draghetti v. Chmielewski,* 416 Mass. 808, 626 N.E.2d 862, 870 (Mass. 1994) (emotional harm or loss of self-esteem on an unlawful interference claim proper if damages are foreseeable).

■ In light of the evidence that Calcagni, as a minority shareholder in Crystal with no official responsibilities, had a conversation with Barba concerning a dispute involving his construction company and D'Andrea's father's concrete company, followed by D'Andrea's termination, we conclude that D'Andrea's damages for tortious interference with a contractual relationship were reasonably foreseeable. Furthermore, we note that whether D'Andrea was an "at will" employee at the time of her termination is of little moment to our analysis since this employment status would merely permit Crystal to terminate D'Andrea "at any time for any reason or for no reason at all." *Roy v. Woonsocket Institution for Savings,* 525 A.2d 915, 917 (R.I.1987). D'Andrea's "at will" status would not and could not permit a third party, such as Calcagni, to interfere with the existing employment relationship, which but for Calcagni's interference, may have gone on indefinitely. Accordingly, we discern no error in the trial justice's instruction.

■ We also have reviewed Calcagni's remaining issues and conclude that they are without merit. In particular, we discern no error in the remainder of the trial justice's jury instructions, nor do we conclude that the trial justice erred in denying Calcagni's mo-tions for judgment as a matter of law, new trial, or remittitur. In addition, whether D'Andrea mitigated her damages was a question for the jury to decide. *See Tomaino v. Concord Oil of Newport, Inc.,* 709 A.2d 1016, 1027 (R.I.1998).

For the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed and the papers in this case are remanded to the Superior Court.