NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-389

ADOPTION OF ENISHA (and three companion cases).[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, a judge (trial judge) found the father unfit to parent his children, Enisha and Rose, and terminated his parental rights.  The trial judge also found the mother unfit to parent Enisha and Rose but ordered the Department of Children and Families (department) to explore a viable plan for reunification.[2]  On appeal, the father argues that the trial judge erred by failing to reconsider a prior judge's (motion judge) order terminating his visitation with his children, and by terminating his parental rights.  He also claims that in light of the trial judge's finding that the

_____

[1] Adoption of Rose; Care and Protection of Bryce; and Care and Protection of Michael.  The children's names are pseudonyms.

[2] The mother filed a notice of appeal but has not submitted a brief and is not a party to this appeal.  Bryce and Michael, and their respective fathers, did not appeal.

department failed to make reasonable efforts regarding visitation with his children, the trial judge erred by not restoring his relationship with the children before terminating his parental rights.  We affirm.

1.  Background.  We summarize the facts as found by the trial judge, all of which find ample support in the record, and none of which the father claims are clearly erroneous.

a.  The father.  The father is a registered sex offender with a long history with the department.  When he was thirteen years old, he was adjudicated delinquent of nine counts of indecent assault and battery on a child under fourteen.  His younger sister and her friend were the victims.  He was placed on probation with a suspended commitment to the Department of Youth Services, and he was placed in a residential treatment program until he turned eighteen.

The father has a long history of verbal and physical abuse of the mother, and Enisha, Rose, and their older brother witnessed much of the violence.  In April 2011, the department received two reports filed pursuant to G. L. c. 119, § 51A, (51A reports) alleging neglect by the father due to domestic violence.  The department investigated both reports, which were screened in, together pursuant to G. L. c. 119, § 51B (51B), and the "51B was concluded with a finding of [c]oncern."  In October 2013, the department received a 51A report alleging neglect due

2

to domestic violence after the mother reported that the father punched her in the stomach while she was around five months pregnant. Although the allegations of neglect were unsupported after a 51B investigation, the department assessed the level of risk as moderate and kept the family's case open for continued case management services. In August 2013, the father was found guilty of disorderly conduct stemming from his attempt to break into the mother's home. In September 2014, he was incarcerated in the house of correction for violating an abuse prevention order issued to protect the mother.[3] The father's propensity for violence continued after Enisha and Rose were placed in foster care. He yelled and screamed at the foster mother and "sh[ook] down the gate" to the home, resulting in the issuance of a harassment prevention order.

The father has struggled with his mental health since adolescence. Around 2014, he sought inpatient treatment after, according to the mother's representations to the facility, he held a knife to the throats of the mother and the children, but he did not work on any of his mental health issues while he was in the program -- believing that he did not need help. In May

---

[3] In addition, the father was convicted of threat to commit a crime and disorderly conduct in November 2017, for an incident that occurred in a court house. He received a split six-month sentence and ultimately served the entirety of that sentence after violating his probation.

2016, the father collapsed on the street; he was transported to a local hospital where he was diagnosed with anxiety and depressive disorders.

In May 2023, during the trial, the father was hospitalized for two weeks for suicidal thoughts and diagnosed with major depressive, generalized anxiety, and unspecified mood disorders. At the time, a local police department was investigating the father for child pornography discovered on a cell phone that he had borrowed from his sister. He was discharged with a fourteen-day supply of medication and an appointment with a psychiatrist. He failed to keep the appointment or continue with the medication as prescribed.

b.  The father's relationship with his children, Enisha and Rose (children). Since February 2016, all contact between the father and the children has been by supervised visitation. The children last visited with the father over three years before the start of the trial. Although many of the supervised visits went well, there is ample evidence that the children had many negative experiences that made them upset, withdrawn, and afraid. When the children returned to the department's custody in May 2020, they had not seen the father in over one year and no longer wanted to visit with him. The children resisted the department's attempts to schedule unsupervised virtual visits. The trial judge found, with ample support in the record, that

4

the father's conduct during supervised visits contributed significantly to the children's unwillingness to see him.

The father filed motions to reinstate his visitation, and the motion judge appointed a guardian ad litem to make recommendations. Notwithstanding, the father continued to act in a manner that caused the children to resist visits. To assist the father in reunifying with the children, the father's action plan tasks included working with a parent aide, consistently engaging in therapy, attending and completing parenting classes, completing a course on domestic violence, completing psychological and neuropsychological evaluations, signing releases, initiating contact with the children through letters, and identifying supports. He was generally unable to successfully complete these tasks.

c. Probate and Family Court proceedings. In November 2015, the father filed for physical and shared legal custody in the Probate and Family Court. The mother left Massachusetts with the children and moved to New York without the father's consent. A judge of the Probate and Family Court entered a temporary order allowing the mother to remain in New York and granted the father parenting time on alternate weekends. In February 2016, the judge sua sponte transferred custody of the children to the department. The department placed the children with the mother in 2017, and the children remained in the

5

department's custody until January 2019. During this time, the father's visits were supervised by the department. On January 29, 2019, a Probate and Family Court judge entered a judgment awarding the mother sole legal and physical custody of the children and providing the father with professionally supervised visitation at his expense.[4] As a result, the department stopped supervising the visits. On the father's appeal, a panel of this court affirmed the Probate and Family Court judgment in an unpublished memorandum and order. See F.L. v. O.S., 97 Mass. App. Ct. 1123 (2020).

d. The children's removal and the permanency plan. In July 2013, the department supported an allegation of neglect after receiving a 51A report when Rose, who was eight months old, was brought to the hospital with a broken clavicle after being left by the mother in the care of six year old Bryce. At that time, the father was incarcerated for violating the abuse prevention order secured by the mother. In May 2020, the department filed a care and protection petition and removed the children from the mother's care due to a mental health crisis. At that time, the father had not visited the children since

_____

[4] Ruling on the father's motion for relief, the Probate and Family Court judge subsequently entered an order permitting supervised visits to occur at a visitation center.

6

January 2019 due to a waitlist at the visitation center, and thereafter, the center closed due to the COVID-19 pandemic.

The department's plan for the children was adoption, but the children opposed it and wanted to be reunified with the mother. Although the trial judge found that the mother was unfit to parent Enisha and Rose, he concluded that the department had not met its burden to prove that her unfitness would likely continue indefinitely into the future. He ordered the department to explore a viable plan for reunification with the mother. The trial judge terminated the father's parental rights, but granted him two yearly reports with photographs and the possibility of future in-person contact. This appeal followed.

2. <u>Discussion</u>. a. <u>Termination of visitation</u>. The father contends that the trial judge erred in failing to revisit a prior order terminating his visitation. We are not persuaded. Termination of parental visitation requires clear and convincing evidence and must be supported by specific findings of fact demonstrating that the visits will harm the children or the public welfare. See <u>Adoption of Franklin</u>, 99 Mass. App. Ct. 787, 795-796 (2021). After an evidentiary hearing conducted on several nonconsecutive days over the course of a month, the motion judge terminated the father's visitation in October 2021, finding that the visits were harmful to the welfare of the

7

children.  In November 2021, the father filed an interlocutory appeal of this order pursuant to G. L. c. 231, § 118.  The single justice denied the petition, concluding that the motion judge's findings were adequately supported by the record, and she did not err or abuse her discretion in concluding that the department had met its burden.  See Department of Children & Families & others vs. Father I & others, Mass. App. Ct., No. 21-J-538 (Apr. 1, 2022).

The father pressed the trial judge to revisit the motion judge's order; however, he failed to provide a complete evidentiary record or an agreed statement of facts -- electing to only submit a transcript of the mother's testimony and not his own.  To the extent this was a strategic decision, the father cannot now claim that the trial judge erred or abused his discretion.  See Draghetti v. Chmielewski, 416 Mass. 808, 815 (1994) ("Dissatisfaction with a trial strategy that did not achieve the result desired by a litigant is not trial error by a judge").

Importantly, the trial judge's decision to not revisit the motion judge's order played no role in his ultimate finding of unfitness.  Indeed, the trial judge ruled that the father's lack of visits with the children would not be considered as evidence of his unfitness at trial, and acknowledging the father's concern, he did not hold the absence of visitation against him.

8

And as detailed supra, the evidence of the father's unfitness was substantial.

b. Termination of parental rights. The father also claims that the trial judge erred in terminating his parental rights. We are not persuaded. "We give substantial deference to the judge's findings of fact and decision, and will reverse only 'where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).

As detailed supra, the trial judge found that the father was unfit due in part to domestic violence and criminal conduct, both of which are relevant considerations for the judge's determination. See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 139 (2004) (domestic violence); Care & Protection of Quinn, 54 Mass. App. Ct. 117, 125 (2002) (criminal history). The trial judge also found that the children were exposed to and were victims of the father's violence, and that as a result of his failure to address his propensity toward violence and abuse, he remained "at considerable risk to abuse or neglect the children." Children who are spectators or victims of domestic violence "suffer[] a distinctly grievous kind of harm" that is relevant to parental fitness. Custody of Vaughan, 422 Mass. 590, 595 (1996).

9

In addition, the trial judge found that the father was unfit due to his unstable and untreated major mental health disorder. These struggles with his mental health placed the children at risk, impacted his ability to assume parental responsibility, and were properly considered by the trial judge. See Adoption of Quentin, 424 Mass. 882, 888 (1997). Throughout this case, the father did not comply or was inconsistent with most of his action plan tasks, claimed he did not need therapy and other remedial services, and failed to benefit from services in which he did participate, all of which is relevant to his fitness. See Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019); Adoption of Rhona, 63 Mass. App. Ct. 117, 125-126 (2005). The trial judge's findings, none of which are challenged by the father as clearly erroneous, are amply supported by the record; and clear and convincing evidence supported the judge's ultimate findings that the father was unfit and would likely remain so indefinitely. We also discern no clear error of law or abuse of discretion in the judge's decision that termination of the father's parental rights was in the best interests of the children. See Adoption of Xarissa, 99 Mass. App. Ct. 610, 615-616 (2021).

c. Reasonable efforts. Finally, the father claims that in view of the trial judge's finding that the department failed to make reasonable efforts to enable visits with the children, the

trial judge erred by not restoring his relationship with the children before terminating his parental rights. We are not persuaded. "Before seeking to terminate parental rights, the department must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents." Adoption of Ilona, 459 Mass. at 60, quoting Adoption of Leonore, 55 Mass. App. Ct. 275, 278 (2002). Here, the judge found that while other factors played a role, the father's own conduct towards the children contributed significantly to their unwillingness to visit him. Even if the department's efforts were lacking, where the father could not provide safety or stability for the children, the trial judge did not abuse his discretion to prioritize the children's best interests. See Adoption of Uday, 91 Mass. App. Ct. 51, 54 (2017), quoting G. L. c. 119, § 29C (finding that department failed to make reasonable efforts did not preclude judge "from making any appropriate order conducive to the child[ren]'s best interests").

Decrees affirmed.

By the Court (Blake, C.J., Hand & Toone, JJ.[5]),

Clerk

Entered: December 30, 2025.

---

[5] The panelists are listed in order of seniority.